493 P.2d 1197

### The CITY OF TUCSON, a body politic, Appellant,

v.

### William D. GALLAGHER and Eleanor Gallagher, husband and wife, and as parents and next friend of Janice Gallagher, Appellees.

#### No. 10544-PR.

Supreme Court of Arizona,
In Banc.
Feb. 17, 1972.

Chandler, Tullar, Udall & Richmond, by Jack Redhair, Tucson, for appellant.

Lesher & Scruggs, by James M. Sakrison, Tucson, for appellees.

John H. Westover, Phoenix, amici curia.

HAYS, Chief Justice.

This case is before us on a petition for review of a decision of the Court of Appeals, reported at 14 Ariz.App. 385, 483 P. 2d 798, affirming a judgment of the superior court entered upon a jury verdict for plaintiff in the amount of $33,000. The opinion of the Court of Appeals is vacated and the judgment of the superior court is affirmed.

Plaintiff, Janice Gallagher Bettini, a seventeen-year-old girl, was a passenger in a car driven by Johnny McMahon, who was taking her and a few friends home shortly after midnight, following a party at Davis-Monthan Air Base where he was stationed. He was being directed by one of the passengers because he was not familiar with the neighborhood. He drove south on Avenida del Sol which dead-ends at Golf Links Road, a Tucson street running east and west and protected by stop signs. The driver stopped at the stop sign and was told to turn east, which he did. Golf Links Road's right of way is approximately one

hundred feet wide. Traffic does not yet require the full one-hundred-foot width, so only the south twenty-two feet is paved; the north seventy-eight feet, reserved for future expansion, is dirt and sand. However, for aesthetic and safety purposes, that portion of the street is kept smooth and free of weeds by periodic grading, so that it gives the appearance, in the dark of an unpaved road. In addition, the curbs on each side of Avenida del Sol flare out to the northern border of the right of way, and the stop sign is placed five feet north of the north curb. In the dark the whole scene tends to cause a stranger to make his turn on to the unpaved part of the street, and makes it nearly impossible to see that the paved portion of the street is some one hundred feet south of the stop sign.

. Several hundred feet east of the intersection, a ditch traverses the unpaved portion of Golf Links Road. There are no warning signs or barricades. McMahon, driving along what he thought was a dirt road, saw what he thought was a dip, and slowed slightly, but before he realized that the "dip" ahead was really an enormous washout, his car suddenly dropped into it, and plaintiff was very seriously injured. The jury's verdict was against both the driver and the city, and necessarily implies a finding that both were negligent. The evidence against the city was more than adequate. The evidence against the driver, though not quite so strong, was adequate to support the verdict. Only the city has appealed.

In any case where the driver's liability insurance is inadequate, there are various conflicts of interest. The driver did not want to suffer a judgment larger than his insurance coverage. His insurance carrier did not want to defend a case which was fraught with danger and had little chance of being won; defense counsel's fees, plus the possibility of being held for an amount exceeding its policy limits, were possible consequences. The carrier offered to pay the $10,000 policy limit for a release of the driver.

Plaintiff, on the other hand, did not want to take a covenant not to sue the driver, and proceed against only the city. That procedure would give defendant's attorney a chance to argue to the jury that the accident was caused by the driver and that the plaintiff had sued the wrong party, and a judgment for the city could result. In the words of plaintiff's counsel, "We felt that we should have his clients [the driver] in . . . ." As a result, plaintiff's counsel entered into an agreement with counsel for the driver and his carrier, providing that plaintiff would have the option at any time to take the $10,000 and release the driver, but that until such option was exercised, the driver would remain in the case as a codefendant with the city. In return, plaintiff promised that if a judgment were obtained against the city for more than $10,000, no attempt would be made to collect anything from the driver, but if a judgment were obtained against the city for less than $10,000, the driver's insurance carrier would pay the difference. This agreement is not in the record *in haec verba*, but is alleged to be substantially as stated, and was revealed to the court before the trial started.

■ The city's principal arguments are directed against this pretrial agreement. It is contended that the contract constitutes a breach of ethics. This appeal is not concerned with the ethics of counsel. Even if it were, there is no showing that the agreement was unethical. *See* Damron v. Sledge, 105 Ariz. 151, 460 P.2d 997. No collusion or perjury is alleged or proved in the instant case.

■ But, the city argues, it was deprived of a fair trial because the effect of the agreement was to take away from the driver all motivation to defend vigorously, since he could not lose, and could only gain, by helping plaintiff get a large verdict against the city.

We are unable to see how the agreement could change either the driver's motive or his trial tactics. In the absence of the

arrangement, his defense would have been based upon a showing that he was not negligent, and that the accident was caused solely by the city's negligence. He had the same identical motives after the agreement was made. The only difference is that he would be motivated in seeing that any judgment obtained by the plaintiff against the city would exceed $10,000.

We have examined the transcript to see whether there is any basis for holding that anything in his testimony might have enhanced plaintiff's verdict. He testified that his health and eyesight were good; that his car's lights and brakes were good; that there were no street lights in the area and that the night was very dark; that he had drunk no alcoholic beverages of any kind that night; that he was driving at a reasonable speed; that he thought he was driving on the street; that he saw the ditch ahead but thought it was a gradual slope for drainage purposes, and slowed only slightly; that he had never driven on this road previously; that when he entered Golf Links Road he could not see the paved strip nearly one hundred feet south of the intersection; that the curbs flared so as to suggest that the road started a few feet south of the stop sign; and that plaintiff was hurt badly, crying, and semi-delirious. All photographs and other medical testimony about her injuries indicate that she was hurt even worse than the driver testified, and there is no indication that he was exaggerating to make the judgment larger.

To further support its position that the agreement created bias on the part of the driver, the city argues that the driver's attorney asked only one question during the trial and did not cross-examine either the plaintiff or her doctor or her dentist. We know of no rule of law requiring cross-examination. The testimony of these three persons appears to have been honest, restrained, and true. In such cases, cross-examination frequently is harmful to the cross-examiner's case. In any event, there was nothing to stop the city attorney from cross-examining at length if he so desired.

Despite that fact, he asked only a few perfunctory questions of the plastic surgeon and none at all of the dentist.

The city also complains that the instructions given were erroneous. The court refused to instruct regarding the duty of the driver to drive on the right side of the road, and concerning the distance that his lights must project ahead to reveal given objects. The city argues that the reason why the court's refusal constitutes error is that if the instructions had been given, "the jury could have properly found that the only proximate cause of the accident was either the failure of McMahon to drive on the right side of the street . . . or his failure to observe the ditch" in time. It seems obvious that the jury, in finding against both the driver and the city, found that there was proximate cause connecting the negligence of each to the accident. We see no way that the instructions could have helped the city. The proximate cause of its negligence is so clear that the jury could not have ignored it. The proximate cause of the driver's negligence is much less clear, but even without the requested instructions, the jury found against the driver. Furthermore, the driver thought that he was on the right side of the road, and his mistake was caused by the city's negligence. As to the headlights, there is no evidence that they were inadequate, and there is testimony that the driver saw the ditch in time and would have stopped if he had not thought that the washout was a dip in the road.

Lastly the city contends that some of the photographs admitted in evidence at plaintiff's request show tire tracks on the dirt portion where McMahon was driving. This is true. But from that premise, the city passes to the proposition that the photographs tend to suggest that if other vehicles left tracks there, other accidents must have taken place. Therefore, argues the city, it ought to have been allowed to introduce evidence to show that no other accident ever took place there. This position is untenable. The pictures merely

help understand the terrain and the nature of the intersection and are in no way evidence of other accidents. There is no evidence whatsoever of prior accidents. Hence, the trial court properly excluded testimony of the lack of other accidents. Fox Tucson Theaters Corp. v. Lindsay, 47 Ariz. 388, 56 P.2d 183.

The opinion of the Court of Appeals is vacated and the judgment of the superior court is affirmed.

STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.

NOTE: Vice Chief Justice JAMES DUKE CAMERON did not participate in the determination of this matter.