534 P.2d 454

**HEMET DODGE, a California Corporation, Appellant,**

**v.**

**Dana Lynn GRYDER, a minor by and through Alice C. Rutan, Guardian of the Estate of said minor, Appellee.**

**No. 1 CA–CIV 2431.**

Court of Appeals of Arizona, Division 1, Department A.

April 22, 1975.

Rehearing Denied May 27, 1975.

Review Denied June 24, 1975.

Beer, Kalyna & Simon, by Olgerd W. Kalyna, Phoenix, for appellant.

Divelbiss & Gage, by G. David Gage, and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Thomas A. McGuire, Jr., Phoenix, for appellees.

## OPINION

FROEB, Acting Presiding Judge.

This action, involving personal injuries sustained by Dana Lynn Gryder, a minor, arose from an accident which occurred when a radiator cap installed by Hemet Dodge, a California corporation, was removed from an overheated radiator on a 1965 Dodge truck owned and operated by Christopher Looke.

In June, 1970, Looke took his truck to be serviced at Hemet Dodge, a car dealership in Hemet, California. The agency made a number of repairs, which included replacing radiator hoses and clamps, adding radiator coolant and supplying a new radiator cap. Instead of installing a radiator pressure cap with a lever release to allow pressure to be vented before it was removed from the radiator, Hemet Dodge used a "non-lever" cap which testimony revealed was not a recommended cap for Looke's truck. A lever release on the top of the cap is a safety feature which allows the cooling system to be depressurized before the cap itself is removed. Though it lacked the safety feature, the cap which Hemet Dodge installed was adequate to close the filler opening on the radiator and to allow the cooling system to function. The difference between the two radiator caps takes on particular significance in view of the location of the motor and radiator of the truck since they were located inside the cab between the driver and passenger seats beneath a removable cover.

On July 10, 1970, having previously driven to the Phoenix area, Looke began his return trip to Hemet, California, with Dana Gryder, then three years old, as his passenger. The outside temperature was hot and before proceeding to California, Looke pulled into a service station to check the radiator. Dana Gryder was seated in the front passenger seat with the seat belt fastened. Looke opened the engine compartment and started to remove the radiator cap. He testified that "it apparently blew off in my hands . . . the pressure blew my hands, scalding me and the little girl" with a "good amount" of water shooting up in the air, where it "hit the ceiling of the truck." Though Looke immediately went around the truck and released Dana Gryder's seat belt, she received serious burns over twenty-five to thirty-five percent of her body and required hospitalization and extensive medical treatment. The most serious burns were located on her left shoulder and arm. Medical testimony at the trial revealed permanent discoloration and scarring.

Suit was filed by Dana Gryder through Alice C. Rutan, guardian of her estate, against Chrysler Motor Corporation, Christopher Looke and Marian Looke, his wife, and Hemet Dodge, a California corporation. The jury returned verdicts in favor of Dana Gryder against the Lookes and Hemet Dodge for $56,000 and in favor of Chrysler Motor. The Lookes are not parties to the appeal.

■ Appellants have raised four assignments of error. The first relates to the opinion testimony of Edward Heler, a manpower economist. After being qualified as an expert, Mr. Heler testified that over her lifetime a hypothetical person with the background of Dana Gryder would experience an impairment of earning capacity of between twenty percent to fifty percent of total earning capacity

which, when translated into present value, would be a loss in earning capacity of from $26,500 to $66,000. Appellant contends that the testimony was improper for two reasons. First, that it was speculative and based on conjecture and, second, that the opinion was based upon hearsay matters not in evidence. As to the first objection, we find there is a sufficient foundation in the record based upon a reasonable degree of probability for a jury to determine potential impairment of future earnings, notwithstanding that it involved a three-year old child (at the time of the accident) with obviously no record of earnings. Heler acknowledged that his opinion was based upon a statistical analysis of all persons in a similar category, and he did not purport to state the specific impairment of future earnings which would be attributable to Dana Gryder. From his testimony the jury could have reasonably concluded that Dana Gryder would experience a diminution of earning capacity without resort to speculation. The fact that the loss is not susceptible to exact calculation did not make it error to admit the testimony into evidence.

We deal next with the second objection. In preparation for his testimony, Heler obtained information from Sandra Brown, mother of Dana Gryder, and Alice Rutan, her grandmother, relating to family background and history, together with certain other sociological data pertaining to the family. They provided information prior to trial by way of answers to questionnaires which during the trial were marked for identification as Exhibit 20. Heler testified that it was necessary for him to obtain this information in his analysis of future earning potential. Before Heler testified, the subject of his testimony and the admissibility of the exhibit was raised by counsel before the court in chambers by way of motion in limine. Appellant argued that Exhibit 20 was hearsay and that the information it contained should only be presented in open court before the jury by admissible evidence. While the record is not clear, it appears that during this session in chambers the court overruled appellant's objections made in limine pertaining to both the forthcoming testimony of Mr. Heler as well as the admissibility of Exhibit 20. During the same session in chambers, counsel for appellee avowed that Mrs. Brown and Mrs. Rutan would appear and testify that they prepared the answers in the questionnaires and furnished the information based on their own knowledge. When Heler later testified, he acknowledged that he used the information in Exhibit 20 as the foundation for his opinion. With Exhibit 20 placed before him in court, Heler was asked to assume for purposes of the forthcoming hypothetical question that the information supplied on Exhibit 20 was information applicable to the hypothetical individual represented by Dana Gryder. When Heler was asked to give his opinion, counsel for appellant objected on the ground that it was going to be based on facts not in evidence. The objection was overruled and Heler gave his opinion testimony concerning the impairment of earning capacity. Thereafter, in accordance with the avowal previously made in chambers, counsel for appellee called Mrs. Brown and Mrs. Rutan as witnesses. Both were handed Exhibit 20 for identification and testified that they had furnished the information on the questionnaires from personal knowledge. They were not examined further by counsel for appellee on direct testimony concerning the information on Exhibit 20, nor did appellant see fit to cross-examine either of the two witnesses concerning the exhibit or information which it contained. For reasons which are not known, the exhibit was not offered into evidence at that time. Thereafter, at the conclusion of the trial, in chambers, counsel for appellee moved for the admission of Exhibit 20 into evidence. There was neither objection nor comment by opposing counsel. Inexplicably, there was no order of the court either admitting or denying Exhibit 20 as evidence, nor was the exhibit thereafter presented to the jury.

■ It is the well-settled rule in Arizona that expert opinion may not be based on hearsay statements or information received by the witness outside the court. See, Udall, Arizona Law of Evidence, § 24 (1960). The purpose of the rule is to prevent the expert from basing his testimony on assumptions which are unknown to the jury and unsupported by the evidence. Gillespie Land & Irrigation Co. v. Gonzalez, 93 Ariz. 152, 379 P.2d 135 (1963); Gilbert v. Quinet, 91 Ariz. 29, 369 P.2d 267 (1962); Middleton v. Green, 35 Ariz. 205, 276 P. 322 (1929).

"An expert may be allowed, in cases where expert opinion is appropriate, to interpret facts in evidence which the jury are not qualified to interpret for themselves, (citing cases). He may base such an opinion either on his personal observations given into evidence, (citing cases), or upon assumption that some portion of the testimony of others already in evidence is true, (citing cases). He must, however, base his opinion only upon competent evidence." Gilbert v. Quinet, 91 Ariz. at 32, 369 P.2d at 268–269.

■ The rule is clearly applicable to the testimony of the expert in the present case. He indicated in his testimony that in order to evaluate the earnings potential of a given person it was necessary to obtain a background of family and social history. He pointed out that, while not conclusive, it was a necessary aid to his analysis and opinion. He testified that he relied upon the facts presented in Exhibit 20 for his opinion. Had he been asked to relate the contents of Exhibit 20, the hearsay objection would have been applicable. On the witness stand he was not asked to relate them, but when asked for his expert opinion, which was based on this exhibit, counsel for appellant objected on the ground of no proper foundation. The objection was overruled. We hold this was error and, but for what occurred thereafter, we would feel constrained to reverse.

Following Mr. Heler's testimony concerning the impairment of potential earning capacity, both Mrs. Rutan and Mrs. Brown were called as witnesses by appellee and testified that all of the information on Exhibit 20 was furnished by them on their personal knowledge. They were not asked by counsel for appellee to recite the information for the court and jury. Moreover, they were not cross-examined by counsel for appellant as to any aspect of the information on the questionnaires which made up Exhibit 20, although counsel for appellant were well aware of its contents. It is apparent from the proceedings which followed, after objections to the exhibit were overruled in chambers, that appellee intended to offer Exhibit 20 into evidence, although this was not done until counsel met with the court in chambers at the conclusion of the testimony. In view of appellant's lack of objection to Exhibit 20 when it was finally offered, and the fact that appellant at no time took issue with the truth of the information which it contained, we are led to conclude that the issue raised is not real, but technical, in nature. Had there been some showing at the trial that the information in Exhibit 20 was other than accurate, we might feel otherwise. Therefore, although the court erred in overruling appellant's objection to Heler's testimony, it is harmless error in this case and not cause for reversal. Leigh v. Loyd, 74 Ariz. 84, 244 P.2d 356 (1952); Keen v. Clarkson, 56 Ariz. 437, 108 P.2d 573 (1940); Frontier Motors, Inc. v. Horrall, 17 Ariz.App. 198, 496 P.2d 624 (1972); Dykeman v. Ashton, 8 Ariz. App. 327, 446 P.2d 26 (1968). No prejudice to appellant has been shown by the failure of appellee to present the foundational facts which supported Heler's opinion testimony. Any weakness in the expert's testimony based on foundation could have been exposed by cross-examination under the circumstances of this case. Article 6, Section 27 of the Arizona Constitution, A.R.S., prohibits reversal for technical error and we hold that this assignment of error is within that category.

Moreover, 16 A.R.S., Rules of Civil Procedure, Rule 61, provides that no error in either the admission or the exclusion of evidence is ground for disturbing a judgment unless refusal to take such action appears inconsistent with substantial justice.[1]

The next assignment of error made by appellant concerns whether the trial court erred in refusing to instruct the jury on the issue of intervening and superceding cause.

Appellant contends that the radiator cap it furnished was serviceable and that the negligence of Looke in removing it while the radiator was overheated was the cause of the injury. It contends that the negligence of Looke intervened and was a superceding cause relieving Hemet Dodge of liability. This principle is recognized in the Restatement of Torts 2d, §§ 441 and 442, as follows:

"§ 441. Intervening Force Defined

"(1) An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.

"(2) Whether the active operation of an intervening force prevents the actor's antecedent negligence from being a legal cause in bringing about harm to another is determined by the rules stated in §§ 442–453.

"§ 442. Considerations Important in Determining Whether an Intervening Force is a Superceding Cause

"The following considerations are of importance in determining whether an intervening force is a superceding cause of harm to another:

"(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

"(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

"(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

"(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

"(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

"(f) if the degree of culpability of a wrongful act of a third person which sets the intervening force in motion."

■ This court has stated that an intervening cause, standing alone, is not sufficient to relieve a defendant of liability. The intervening cause must also be a superceding cause. Collins v. County of Maricopa, 15 Ariz.App. 354, 488 P.2d 991 (1971).

In the present case, we see that Looke's act of removing the cap was an intervening cause of the injury as it (1) actively operated to produce the harm (2) upon a condition that had become passive. Herzberg v. White, 49 Ariz. 313, 66 P.2d 253 (1937).

■ We next consider whether Looke's intervening act was also a superceding cause of the injury. We have stated:

"For an intervening cause to be a superceding cause it must be a cause which

---

1. We note with interest that the new Federal Rules of Evidence, recently approved by the United States Congress for Federal Courts, have significantly changed the foundation requirements pertaining to expert testimony. Rule 705 states:

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

could not have been reasonably foreseen or anticipated by the defendant. Stated differently, in order for an intervening cause to supercede the original negligence, the intervening cause must be so extraordinary that the defendant could not have reasonably anticipated that the cause would intervene." City of Phoenix v. Schroeder, 1 Ariz.App. 510, 517–18, 405 P.2d 301, 307–8 (1965).

We are not able to find, however, that Looke's intervening act was of such an extraordinary and unforeseeable nature as to be a superceding cause so as to relieve Hemet from responsibility. See Salt River Valley Water Users' Assoc. v. Cornum, 49 Ariz. 1, 63 P.2d 639 (1937), and Herzberg v. White, supra. Looke had boil-over trouble before he took his truck to Hemet Dodge to get it checked and serviced. Hemet Dodge made repairs to the radiator and radiator hoses as authorized by Looke. The radiator cap actually used by Hemet Dodge had language across its top reading, "pressured system . . . release slowly," thus confirming the danger which could result from an overheated radiator. We hold it was foreseeable that Looke, or someone else, might try to remove the cap in the presence of others when the engine was overheated. The occurrence was not "extraordinary." It is something commonly known to most who work on and operate motor vehicles and therefore foreseeable. Refusal of the trial court to instruct the jury on intervening and superceding cause was not error.

■ The next assignment of error made by appellant relates to a pretrial covenant entered into between Dana Lynn Gryder, through her guardian, and Christopher Looke. This was an oral agreement, the terms of which were ultimately set out in answers to interrogatories submitted by Hemet Dodge to Gryder and Looke. The substance of the agreement was that in the event of a trial resulting in a verdict and final judgment, plaintiff would execute upon that judgment in a pre-determined manner, depending upon the amount of the verdict and against whom it was rendered. Execution on the judgment was to be as follows:

1. In the event of a defense verdict in favor of all defendants, defendant Looke would pay the sum of $50,000 to plaintiff.

2. In the event of a verdict against the defendant Looke alone, regardless of the amount of that judgment, defendant would pay to the plaintiff the sum of $50,000.

3. In the event of a judgment against the defendants Hemet Dodge and Chrysler Motor Company, or either of them, plaintiff would execute as follows:

(a) In the event the judgment was less than $50,000, plaintiff would execute against the defendants Chrysler or Hemet for the amount of the judgment and against Looke for the balance;

(b) In the event the judgment was in excess of $50,000, plaintiff would execute entirely against the defendants Hemet and/or Chrysler.

Appellant contends that the agreement was against public policy and void. It argues in the alternative that if it was not void then the claims against the several defendants should have been severed for trial and that in any event Hemet Dodge was entitled to credit for the guaranteed amount. While there is considerable case authority in other jurisdictions [2] condemn-

2. See, for example, Lum v. Stinnett, 87 Nev. 402, 488 P.2d 347 (1971); Degen v. Bayman, 86 S.D. 598, 200 N.W.2d 134 (1972); Ward v. Ochoa, 284 So.2d 385 (Fla.1973); Weinstein v. National Car Rentals, 288 So.2d 509 (Fla.App.1973); General Portland Development Company v. Stevens, 291 So.2d 250 (Fla.App.1973); See Comment, The Mary Carter Agreement—Solving the Problems of Collusive Settlements in Joint Tort Actions, 47 S.Cal.L.Rev. 1393 (1974).

ing these arrangements as bordering on collusion and tending to mislead judges and juries, they have been approved by the Arizona Supreme Court in City of Tucson v. Gallagher, 108 Ariz. 140, 493 P.2d 1197 (1972), and City of Glendale v. Bradshaw, 16 Ariz.App. 348, 493 P.2d 515 (1972), supplemented in 16 Ariz.App. 483, 494 P.2d 383 (1972) and on review, 108 Ariz. 582, 503 P.2d 803 (1972). We uphold the agreement in this case as it is within the scope of those which have been approved by the Arizona Supreme Court.

■ Appellant argues that the court abused its discretion in not granting its motion for severance of the issues against defendant Looke so that the matter could be presented to the jury in a truly adversary proceeding against Chrysler and Hemet Dodge. Since the granting or denying of a motion for severance is a matter within the discretion of the trial court, we reject the appellant's contention on this point. The decision of the Supreme Court in the *Gallagher* case recognizes that this type of covenant agreement allows the plaintiff to be assured of some recovery, but without the disadvantage of having to try a case with an "absent" defendant. There is, therefore, nothing in the existence of the agreement which would require the trial court to sever the issues. It was a matter for the discretion of the court which we find was not abused.

■ Finally, appellant was not entitled to a credit in the amount of $50,000 for the reason that no money was actually paid to the plaintiff under the covenant prior to judgment. Since no money was paid, the rule pertaining to credit in Egurrola v. Szychowski, 95 Ariz. 194, 388 P.2d 242 (1964) does not apply.

Affirmed.

DONOFRIO and JACOBSON, JJ., concur.