564 P.2d 895

**MUSTANG EQUIPMENT, INC., a corporation, Appellant,**

v.

**Ronald G. WELCH, Appellee.**

**Ronald G. WELCH, Appellant and Cross-Appellee,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, Appellee and Cross-Appellant.**

**No. 13040–PR.**

Supreme Court of Arizona,
En Banc.

May 4, 1977.

Renaud, Cook, Miller & Cordova by John H. Seidel, Phoenix, for appellant.

John R. Elliott, Phoenix, for appellant and cross-appellee.

Fennemore, Craig, von Ammon & Udall by Roger C. Mitten and Ruth V. McGregor, Phoenix, for appellee and cross-appellant.

HAYS, Justice.

We are asked in this case to decide whether the nondisclosure of a pretrial covenant not to execute, made between the plaintiff and one of three codefendants, has any effect on, 1) the trial litigated without the knowledge that such pretrial agreements existed, and 2) the validity and enforceability of the covenant itself as between the agreeing parties.

This case comes to us on a petition for review. The facts and procedural background necessary for our determination of this matter are as follows.

On February 18, 1972, the vehicle which the plaintiff below, Ronald G. Welch, was driving was struck in the rear by a truck owned by Mountain States Telephone & Telegraph (hereafter "Mountain States") and driven by one Jose Lopez, an employee of Mountain States. A complaint was filed by Welch on January 22, 1973, naming Lopez and Mountain States as defendants.

Within a few days of the filing of the complaint, a conference took place between the plaintiff's attorney and the attorney for Mountain States. A representative of Mountain States was also present. While there was no evidence adduced at trial nor was there any testimony taken at any of the post-trial proceedings to indicate for the record precisely what took place at that meeting, we are able to glean the substance of that conference from certain affidavits filed with the post-trial motions and from a letter written soon after the meeting which apparently confirmed the agreements reached therein.* It appears that Mountain States had investigated the accident and had come up with a third defendant, Mustang Equipment, Inc. (hereinafter "Mustang") against whom the plaintiff might

---

* The letter reads as follows:

"Dear John [attorney for the plaintiff, Welch]:

This is to confirm our luncheon conference of Friday the 26th with Rex Anderberg of Mountain States. I enclose a copy of a letter dated February 28, 1972 from our expert, Ron Balfour and ask that you do not give this letter or refer to its contents to anyone on behalf of Mustang Equipment Company. Further, this confirms our agreement that you will file an Amended Complaint including Mustang as a defendant; that we will proceed to attempt to prove our case of brake failure as a result of Mustang's negligence and should you obtain a verdict against both Mountain States and Mustang that you will execute solely against Mustang for that verdict. It is our intention to crossclaim against Mustang for the property damage to Mountain States' vehicle.

Yours very truly,
FENNEMORE, CRAIG, von AMMON & UDALL
Roger C. Mitten [attorney for Mountain States]

AGREED
Sept. 30/74
John R. Elliott"

successfully pursue a claim. Mountain States, according to the affidavit of the plaintiff's attorney, offered to provide the plaintiff with the name of the third defendant and with a certain engineer's report concerning the then unnamed party if the plaintiff would agree not to execute against Mountain States in the event that judgment were rendered against both Mountain States and the then unnamed defendant. The plaintiff agreed and thereafter amended his complaint to include Mustang as a defendant. Mountain States then cross-claimed against Mustang for the damage done to its vehicle.

Neither Mustang nor its attorneys were made aware of the above-described agreement at any time prior to or during the litigation of the personal injury action. In fact, the letter written by Mountain States' attorney and set forth in the footnote, *supra,* specifically requested that the letter and its contents, which confirmed the agreement not to execute, be withheld from Mustang and its representatives. Neither was the trial court at any time prior to or during the trial made cognizant of the existence of the agreement.

In any event, the personal injury suit proceeded in normal fashion through the discovery stages and into trial. The jury returned a verdict in favor of the plaintiff, Welch, and defendant Lopez and against both Mountain States and Mustang in the amount of $20,000. After the time for appeal had run under rule 73(b), Rules of Civil Procedure, 16 A.R.S., Welch, via counsel, made a demand upon Mustang for payment of the full amount of the judgment. After inquiry as to why the plaintiff sought to collect the full amount from his client instead of from both corporate defendants, Mustang was informed for the first time of the Welch-Mountain States agreement that Welch would execute solely against Mustang if the verdict came back against both defendants, as in fact it did.

Pursuant to rule 60(c), Arizona Rules of Civil Procedure, 16 A.R.S., Mustang filed a Motion for Relief from the Judgment. Mustang's motion was subsequently denied by the trial court and an appeal was taken to the Court of Appeals, Division One.

In the meantime, the plaintiff, having been resisted in his attempt to execute against Mustang, sought to execute against Mountain States. Mountain States thereupon applied for an injunction and stay of execution and further filed a rule 60(c) motion for relief from the judgment, relying on the agreement. While the trial court denied Mountain States' motion for relief from the judgment, it granted it an injunction and stay of execution pending the determination of the appeal by Mustang of the denial of its rule 60(c) relief. Welch filed an appeal from the court's order enjoining and staying execution, and Mountain States cross-appealed from the portion of the court's order denying its motion for relief.

The two appeals were consolidated by the Court of Appeals who reversed both orders and remanded the cause for a new trial. The Court of Appeals decision in this matter is vacated.

In recent years the courts of this jurisdiction have approved certain pretrial agreements, commonly known as "Gallagher agreements," made between a plaintiff and one of several codefendants which deal with how the agreeing defendant's liability, if any, will be handled after the verdict is rendered. *City of Tucson v. Gallagher,* 108 Ariz. 140, 493 P.2d 1197, 65 A.L.R.3d 597 (1972); *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969); *Hemet Dodge v. Gryder,* 23 Ariz.App. 523, 534 P.2d 454 (1975); *City of Glendale v. Bradshaw,* 16 Ariz.App. 348, 493 P.2d 515 (1972), *supplemented on rehearing,* 16 Ariz.App. 483, 494 P.2d 383 (1972), *aff'd in part, rev'd in part,* 108 Ariz. 582, 503 P.2d 803 (1972); *cf. Ulan v. Richtars,* 8 Ariz.App. 351, 446 P.2d 255 (1968). As stated earlier, the question presented here is whether the failure to disclose the existence of such an agreement prior to or at trial either invalidates the agreement or in any way does harm to the integrity of the trial.

Preliminary to our consideration of the effect that the nondisclosure of the agree-

ment may have on our disposition of this case, we must first consider whether the Welch-Mountain States agreement of this case is, in and of itself and with nondisclosure aside, a valid and binding Gallagher agreement. Welch argues that the agreement is unsupported by consideration and thus is unenforceable. Welch further contends that even if it is enforceable, it is distinguishable from the agreements involved in *Gallagher, Bradshaw* and *Hemet Dodge* and therefore, he argues, the holdings of those cases have no precedential value in our determination of this matter.

■ Meeting first the contentions that the covenant is unsupported by consideration, we find his argument to be without merit. By the terms of the agreement, the plaintiff promised not to execute upon Mountain States in the event both defendants were found negligent while obtaining immediate access to a new and potentially liable defendant and an engineer's report which apparently tended to place the fault of the accident on that defendant. Consideration consists of a benefit to one party or a detriment to the other. *Grant v. White,* 103 Ariz. 257, 439 P.2d 828 (1968). While it is true that the plaintiff would have eventually obtained both the report and the additional defendant's name had he followed the normal channels of discovery, by obtaining the information in this manner he both expedited receipt of the information and obviated the need for at least a certain amount of discovery and/or investigation. Clearly, Welch was conferred a benefit under the terms of the agreement. Mountain States, on the other hand, was relieved by the agreement of its financial responsibilities if the verdict resulted in joint liability. Forbearance to assert a legal claim is valid consideration. *Gill v. Kreutzberg,* 24 Ariz. App. 207, 537 P.2d 44 (1975). We hold that there was valid and mutual consideration sufficient to support the Welch-Mountain States agreement.

■ The plaintiff's contention that the Welch-Mountain States covenant is not a so-called Gallagher agreement is also without merit. Although the Welch-Mountain States agreement is concededly different in its specific terms and conditions from those considered and approved in *Gallagher, Bradshaw* and *Hemet Dodge,* we perceive the differences to be a matter of degree and not substance. In those cases, an agreement was reached between the plaintiff and one or more, but not all, of the defendants which dealt with how the judgment would be collected, if at all, from the agreeing defendant after the trial. Under the agreements the cooperating defendant stood to limit or extinguish his liability to the plaintiff while conferring on the plaintiff the benefit of a guaranteed predetermined recovery. While the benefit that the plaintiff received in this case was not in terms of a guaranteed recovery, it was a benefit which most certainly enhanced the probability that a verdict would be rendered in his favor and it expedited to a degree the investigatory and discovery stages of this litigation. Thus, while we recognize that the Welch-Mountain States agreement is substantially simpler by its terms than those found in our earlier cases, it performs essentially the same function and is of a sufficiently similar nature to fall within the scope of those agreements heretofore approved by the appellate courts of this state and to be governed by the principles of law set forth in those cases.

Having determined that Welch-Mountain States' covenant was a valid and binding agreement in and by itself, we must next consider whether the parties' failure to disclose the agreement to either the court or the nonagreeing defendant invalidates the agreement or in any way taints the trial below.

As noted before, Gallagher-type agreements have been approved on several occasions in this jurisdiction. See *supra.* In each of those instances, however, the agreement was communicated to both the court and the nonagreeing defendant's counsel prior to the beginning of trial. And while we have never expressly stated that the validity of such agreements is conditioned upon full disclosure prior to trial, we are aware of authority in this jurisdiction

wherein it has been intimated that disclosure is a necessary prerequisite to upholding the validity of such an agreement.

In *City of Glendale v. Bradshaw, supra,* the Court of Appeals upheld the validity of a Gallagher-type agreement which was disclosed prior to trial. In so doing, the court was required to distinguish certain authorities which disapproved of such agreements. The court distinguished each of the cited precedents on the basis that the agreement in those cases was not disclosed. Thus, while the court did not directly state that pretrial disclosure was necessary to uphold the agreement, the court did appear to premise its approval of the agreement before it on full disclosure of the agreement, prior to trial, to all concerned parties.

In *Ulan v. Richtars, supra,* the Court of Appeals stated, in dicta, that where some, but not all, of the defendants enter a binding settlement agreement with the plaintiff, it is the duty of the involved parties to so advise the court of the agreement.

The Ethics Committee of the State Bar of Arizona has furthermore spoken on this subject. Opinion No. 70–18, issued on July 28, 1970, and cited in *City of Glendale v. Bradshaw, supra,* dealt with an agreement between the plaintiff's counsel and counsel for two of the three defendants whereby the plaintiff would receive $10,000 prior to trial from the two agreeing defendants, and the plaintiff would in return agree not to execute for any amount in excess of $10,-000. An alternative agreement was also provided whereby the plaintiff would execute against the agreeing defendants only in the event that the other defendant's insurance limitations failed to satisfy the judgment. Under both proposed agreements, the agreeing defendants would actively participate in the trial and neither the court nor other defendants were to be informed of the arrangement.

The committee concluded that both agreements were improper. In *Bradshaw* this ethics opinion was deemed not to be influential because under the facts of that case, the agreement was disclosed to all parties involved. Such is not the case here

and we find this distinction to be significant.

One reason that the disclosure of Gallagher agreements is or should be required is to avoid the inherent tendency to work a fraud on the court and to avoid "collusion" between the plaintiff and some of the defendants. *See Ward v. Ochoa,* Fla., 284 So.2d 385 (1973). Mountain States points out that when the agreement is such that it requires the agreeing codefendant to maintain a bona fide adversary posture at trial, the reasons requiring pretrial disclosure are not applicable and hence disclosure should not be required. It is argued that because the Welch-Mountain States agreement could not by its nature encourage collusion or fraud and it did nothing to change Mountain States motivation to defend vigorously that the parties failure to disclose the agreement should not invalidate the agreement.

We agree that the particular agreement entered here did not encourage fraud or collusion. Had the agreement been disclosed prior to trial, the motivations and trial strategies of all concerned would have been identical. Both Mustang and Mountain States denied negligence. Mustang was aware from the start that Mountain States, by virtue of its cross-claim, would attempt to show that Mustang's negligence was the sole cause of the accident. Unlike the agreements in *Gallagher* and *Bradshaw,* the Welch-Mountain States agreement did not, in effect, encourage the agreeing defendant, Mountain States, to seek to enhance the size of the verdict. There have been no allegations of fraud or collusion nor has it been alleged that Mountain States tried its case with less than a total effort. Mustang has not argued that it was prejudiced at trial by the nondisclosure nor has it alleged that either it or its codefendant, Mountain States, would have conducted its defense differently had it been apprised of the pretrial agreement.

In short, it is clear and virtually undisputed that the nondisclosure of the Welch-Mountain States agreement did not upset the adversarial conduct of the parties at

trial nor did it in any way encourage either fraud or collusion. We are satisfied that the trial was conducted precisely as it would have been had the terms of the agreement been divulged to the court and counsel for Mustang, and that nondisclosure had no effect whatsoever on the integrity of the trial.

Nevertheless, our concern does not lie exclusively in the validity of the trial. It has always been the policy of the law to favor and encourage the resolution of controversies through compromise and settlement rather than through litigation. *Dansby v. Buck,* 92 Ariz. 1, 373 P.2d 1 (1962). In the instant case, the disclosure of the Welch-Mountain States agreement may well have fostered or encouraged a pretrial settlement between Welch and Mustang. At the least, we cannot say that Mustang's counsel would not have taken a more positive attitude into settlement negotiations had he been aware of the agreement. While Mustang's counsel was certainly cognizant of the rule in Arizona against contribution among co-tortfeasors, *State Farm Mutual Ins. Co. v. Factory Mutual Ins. Co.,* 22 Ariz.App. 199, 526 P.2d 406 (1974), and thus was aware that his client could, if the plaintiff so chose, be held to account for the entire amount of the judgment in the event that both defendants were found negligent, the agreement made this possibility a certainty. Had Mustang's counsel known that the plaintiff would execute solely upon his client and for the entire amount of the judgment, he may indeed have been more amenable to settlement prior to trial. Thus, while the parties' failure to disclose the agreement apparently did not affect any litigant's course of conduct at the trial itself, we cannot say that counsel for Mustang would not have pursued a settlement more actively than it actually did had it known of the terms of the agreement. Accordingly, we think it the better policy to require candid disclosure of all Gallagher-type agreements to the court and to all parties concerned before trial or, if entered into during the course of the trial, at the earliest possible opportunity.

Finally, we think this is a matter of public policy. While we recognized that under the particular fact situation of this case there was neither fraud, collusion nor unethical conduct involved, we cannot condone secret agreements between a plaintiff and defendant which, by their very secretiveness, may tend to encourage wrongdoing and which, at the least, may tend to lessen the public's confidence in our adversary system.

Pursuant to the foregoing, we hold the agreement entered into between Welch and Mountain States to be unenforceable due to the failure of the parties to disclose the agreement to counsel for Mustang and to the court.

In light of our holding, the court's order granting Mountain States a permanent injunction and stay of execution is reversed. The part of the order denying Mountain States relief from the judgment is affirmed. The court's order denying Mustang its motion for relief from the judgment is also hereby affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.