No. 14492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

M. E. ROGERS,

Plaintiff and Respondent,

-vs-

GEORGE A. RELYEA and DOROTHY RELYEA,

Defendants and Appellants.

---

Appeal from:  District Court of the First Judicial District,
              Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

   For Appellants:

      Daniels and Mizner, Deer Lodge, Montana

   For Respondent:

      Gough, Shanahan, Johnson & Waterman, Helena, Montana

---

Submitted on briefs: August 1, 1979

Decided: OCT 2 1979

Filed: OCT 2 1979

_____
                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from Broadwater County concerning the specific performance of an agreement and option to purchase mining claims.

Defendants Relyea are the owners of patented and unpatented mining claims in Broadwater County. In 1965 defendants entered into an agreement permitting the Finley Company to mine the property on which the claims were located and keep all proceeds from the mining operations. The agreement included an option to purchase the mining claims and provided for the establishment of escrow and a deposit of a deed in escrow by the defendants. In 1967 Finley and the defendants modified the schedule of payments in the agreement.

The original agreement with its modification was assigned by Finley to plaintiff M. E. Rogers also in 1967. The assignment specifically recited that the escrow mentioned in the original agreement had never been established. Between 1967 and 1974, the parties modified the assigned contract four or more times because of plaintiff's failure to make timely payments. One of these modifications was a document entitled "Option Agreement" where plaintiff was granted the exclusive right to purchase the mining claims and payments were made annually beginning on January 2, 1974. The first January 2nd payment was further extended until June 15, 1974, by a modification executed by the parties on March 15, 1974. Plaintiff failed to make the June 15th payment.

In May 1974 plaintiff contacted Richard Voit to secure financing for the development of the mine. Voit and plain-

tiff observed the mining property and went to the bank where the escrow was to have been established. They discovered, however, that the escrow had not been established. Voit told plaintiff that he would withdraw his financial commitment to the mine if the escrow was not established. Plaintiff then went to defendants' residence and requested that the deed be placed in escrow. Defendants refused, however, claiming that plaintiff had not complied with the terms of the agreement. Defendants thereafter assumed the relationship was terminated with plaintiff and arrangements were made with other parties for the development of the property.

Prior to the termination of the agreement, plaintiff, defendants and a third party entered into a contract in 1974 for the cutting of stumpage on the mining property. Under the stumpage contract, payments by the third party were made to defendants and applied to plaintiff's annual payment under the contract between defendants and plaintiff.

Plaintiff filed a complaint on December 8, 1975, seeking to restrain defendants from terminating the agreement, requiring defendants to specifically perform portions of the agreement, and requesting damages for the breach of the agreement. Upon a motion for partial summary judgment, the District Court found that a valid agreement existed between the parties which agreement was breached by defendants' failure to establish an escrow agreement and credit certain payments to plaintiff. The court excused plaintiff from his performance under the agreement. Upon the trial of the remaining issues, the court reformed the contract and ordered specific performance. Damages resulting from the breach were denied. From this judgment, both plaintiff and defendants appeal.

Several issues are raised on appeal:

1. Did the District Court err in granting plaintiff specific performance because the agreement contained an option to purchase and therefore lacked mutuality required for the granting of specific performance?

2. Was defendants' failure to establish an escrow agreement a material breach of the contract which excused plaintiff's failure to make required payments under the contract?

3. Did the District Court err in finding that defendants failed to credit payments under the stumpage contract to plaintiff?

4. Was the stumpage contract not binding on the parties because it was not supported by consideration?

5. In reforming the contract, did the District Court err in requiring plaintiff to execute a promissory note and real mortgage upon payment of one-fifth of the balance of the purchase price?

6. Did the District Court err in failing to grant plaintiff damages for the breach of the agreement?

With regard to the first issue, defendants argue that equity will not decree the specific performance of an option to purchase contained within a mining agreement because options are unilateral in nature and lack mutual obligations. We disagree. The rule is well settled that options to purchase may be specifically enforced in circumstances like the present case. Steen v. Rustad (1957), 132 Mont. 96, 313 P.2d 1014; McLaren Gold Mining Co. v. Morton (1950), 124 Mont. 382, 224 P.2d 975. The McLaren case is particularly analogous to this case. McLaren involved an action for specific performance of an option to purchase contained

-4-

within a mining lease. The plaintiff, as lessee, assigned his interest in the contract to a third party who expended considerable sums in developing and mining the property. In directing the defendant lessor to specifically perform the terms of the contract and option to purchase, the Court stated:

> "'There is no class of contracts connected with the mining industry more familiar to the profession than that of options to purchase, working bonds, or executory contracts of sale. Unlike other classes of real estate, the value of a mine cannot be determined by mere superficial observation. Expensive investigations, involving measurements, examination of underground geological conditions, and sampling invariably precede the consummation of a purchase or sale of mining property. In order to justify an intending purchaser in making the requisite investigations and incurring the attendant expense, he invariably exacts some contract from the owner by which he secures the first privilege of purchasing the property in the event the examination proves satisfactory. In addition to this, a large army of "promoters," recruited from the ranks of all professions, trades, and occupations, swarm through the mining regions, seeking exclusive privileges and "options" on mining properties of all classes for the purpose of marketing them in the moneyed centers of the world. These conditions have given rise to a class of contracts infinite in variety, from a mere letter signed by the owner, agreeing to accept a certain price for his mine if paid within a certain time, to a formidable working bond, which contemplates entry into possession and extensive exploitation to prove the value of the mine before the privilege of purchase must be exercised. The ultimate object of all of them, however, is to secure the exclusive privilege of purchasing at a given price, within a specified time. * * *

> "'* * * the rule that contracts which do not involve mutuality cannot be specifically enforced is modified in favor of the holder of this class or contracts. He is afforded this equitable remedy, where he fully and fairly performs, or offers to perform, the terms of his contract within the time stipulated.

> "'The very purpose of an optional contract of this nature is to extinguish this mutuality of right and vest in one of the parties the privilege of determining whether the contract shall be vitalized and enforced. An option to buy or sell land, more than any other form of contract, contemplates

a specific performance of its terms; and it is the right to have them specifically enforced that imparts to them their usefulness and value.'" 124 Mont. at 392-93, quoting 3 Lindley on Mines (3rd Ed.), section 859, pp. 2123-2127.

We hold, therefore, that the option to purchase contained within the contract in the instant case may be enforced by specific performance.

With respect to the second issue, defendants argue that the covenant to establish escrow was not a material part of the contract and was independent of plaintiff's covenant to make timely payments. On this basis defendants argue that their failure to establish the escrow did not excuse plaintiff's failure to make the June 15 payment. In the alternative, defendants contend that plaintiff waived the establishment of escrow as a material part of the contract. It is argued that plaintiff knew from the modifications and the assignment that the escrow had never been established and that this became an immaterial part of the agreement.

We disagree. The covenant to establish escrow was a material part of the contract and a condition precedent to plaintiff's obligation to make payments. The object of the contract entered into between the parties was the purchase, development and financing of the mining claims. The establishment of the deed in escrow was an integral part in the attainment of this object. Without the escrow, it is highly probable that the parties would not have even contemplated such an agreement.

As to defendants' argument that plaintiff waived the establishment of escrow as a material part of the contract, the record is clear that plaintiff did not waive this requirement. Though the assignment acknowledged the escrow had never been established, plaintiff went to defendants' resi-

dence in May 1974 to request the establishment of the escrow. At that time, plaintiff was current in his payments. Plaintiff did not default until he failed to make the June 15 payment; defendants, however, defaulted earlier when they refused to establish the escrow.

The general rule is that a party committing a substantial breach of a contract cannot maintain an action against the other contracting party or his predecessor in interest for a subsequent failure to perform if the promises are dependent. 17 Am.Jur.2d Contracts, §366, p. 807. A substantial or material breach is one which touches the fundamental purposes of the contract and defeats the object of the parties in making the contract. Here, the District Court found that defendants committed a substantial breach of the agreement and ordered defendants to specifically perform the terms of the contract. Implicit in the court's order was the fact that the covenants were dependent. It is the general rule that the court's findings will not be disturbed on appeal unless unsupported by substantial evidence. Arrowhead, Inc. v. Safeway Stores, Inc. (1978), ____ Mont. ____, 587 P.2d 411, 413, 35 St.Rep. 1830, 1832. Here, we find that there is sufficient credible evidence to support the findings of the court.

Defendants next argue that the District Court erred in finding that defendants failed to credit certain amounts received to plaintiff's annual payment under the agreement. These amounts stemmed from a separate contract for the sale of stumpage on the mining property. Under this contract plaintiff, defendants and a third party agreed that payments under the stumpage contract would be made to defendants and

applied against the plaintiff's annual payment under the agreement between plaintiff and defendants.

Defendants contend that the finding is not supported by substantial evidence, since the record does not reflect the receipt of any such money. Plaintiff argues, however, that defendants admitted the finding because they failed to answer a request for admission regarding the matter within 30 days. The request asked defendants to admit that they failed to credit payments from the stumpage contract to plaintiff's annual payment.

Under Rule 36, M.R.Civ.P., "the matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . ." Here, the record discloses that defendants failed to answer the request and were not granted an extension by the court. Therefore, as plaintiff properly contends, the matter was deemed admitted. In so holding, however, we feel it is noteworthy to mention that the District Court also ordered an accounting to ascertain the exact amount of plaintiff's credit in the instant case and that, if defendants' assertion is in fact true, it will bear itself out when that accounting occurs.

Defendants also argue that the stumpage contract was not a binding agreement on the parties because it was not supported by any consideration. This is simply not true. Defendants had an injunction and a suit pending against plaintiff and the third party regarding the cutting of stumpage on the mining property. They later relinquished their claim when the parties resolved their disagreement by

executing the stumpage contract. This was sufficient consideration to create a binding contract. Murray v. White (1911), 42 Mont. 423, 113 P. 754; Mustang Equipment, Inc. v. Welch (1977), 564 P.2d 895, 115 Ariz. 206.

The fifth issue raised concerns the extent to which a court may reform a contract. Plaintiff contends that it was error for the District Court, in reforming the contract, to require plaintiff to execute a promissory note and a real estate mortgage upon payment of one-fifth of the balance of the purchase price. It is argued that this requirement imposed greater burdens on plaintiff than originally contemplated by the parties: it obligated plaintiff to making all further payments after making the first payment; it created personal liability on the part of plaintiff for the unpaid balance of the purchase price; and it gave defendants the right to foreclose in the event of a future default.

Defendants also contend it was error for the District Court in reforming the contract to order an accounting, schedule a new option to purchase date, and set up a new payment schedule.

The power of a court to reform a contract was discussed in Sullivan v. Marsh (1950), 124 Mont. 415, 421-22, 225 P.2d 868, 872, where this Court stated:

> "One may not employ a suit for reformation of a contract for the purpose of making an entirely new agreement. Such suits are only to establish and perpetuate an already existing agreement, and to make it express the real intent of the parties as such intent existed at the time of the making of the agreement. A court of equity is not empowered to supply by decree an agreement which was never made . . . It is the duty of the court to enforce contracts which the parties themselves have made and not to make new and different contracts for the parties or to make significant additions thereto and thus give to one or more of the parties, benefits and advantages on which the minds of the contracting parties have never met."

We hold that it was not error for the District Court to order an accounting, schedule a new option to purchase date and set up a new payment schedule. These adjustments were necessary to determine the state of affairs between the parties and carry out their agreement once the contract had been breached and the dates for plaintiff's performance had passed. Without these adjustments, it was impossible for the court to give effect to the order for specific performance. The adjustment of these terms was consonant with the powers of a court in equity and the purposes of equitable relief. Amos v. Bennion (1969), 23 Utah2d 40, 456 P.2d 172.

However, it was error for the District Court to require plaintiff to execute a promissory note and real estate mortgage upon the payment of one-fifth of the balance of the purchase price. Although the requirement was, understandably, a sincere effort by the court to remedy the pattern of untimely payments by plaintiff, it nevertheless exceeded the scope of the agreement as originally contemplated by the parties. It altered the original agreement by creating new rights and obligations, and it was not necessary to reinstate the contractual relationship between the parties. For these reasons, we order that the requirement be deleted.

Finally plaintiff argues that the District Court erred in not granting damages for the breach of the contract. The thrust of plaintiff's contention is that defendants' breach "drove off a potential investor [Voit] attracted to the mine" and prevented plaintiff from financially developing the mine.

Montana statutes set forth the measure of damages in the case of breach of contract. Section 27-1-311, MCA, provides:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby or which in the ordinary course of things would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." (Emphasis added.)

The District Court held that plaintiff's claims were too speculative or not supported by the evidence to permit an award of damages. We agree. We cannot say with absolute certainty that the mine would not have been developed if Voit had not decided to invest in the venture. Another investor could have possibly expressed interest, or it might have been that Voit would have decided for some other reason not to invest in the mine regardless of the establishment of escrow.

Affirmed in part and reversed in part.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-