NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MFC INVESTMENTS, LLC, a Nevada limited liability company,
*Plaintiff/Appellee*,

*v.*

JOHN GRAY and BONNIE GRAY, husband and wife,
*Defendants/Appellants*.

No. 1 CA-CV 15-0611
FILED 11-8-2016

Appeal from the Superior Court in Maricopa County
No.  CV2013-006358
The Honorable James T. Blomo, Judge

**AFFIRMED**

COUNSEL

Cohen Kennedy Dowd & Quigley, PC, Phoenix
By Daniel G. Dowd, Cynthia C. Albracht-Crogan, Gabriel R. Aragon
*Counsel for Plaintiff/Appellee*

Brooks & Affiliates, PLC, Mesa
By David P. Brooks, Spencer W. Call
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Judge Edward W. Bassett[1] delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

_____

**B A S S E T T**, Judge:

¶1   John and Bonnie Gray appeal from the judgment enforcing a settlement agreement in favor of MFC Investments, LLC.  For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2   MFC Investments, LLC ("MFC") filed a complaint in April 2013 against John and Bonnie Gray ("Gray") alleging breach of contract for failure to pay amounts due on multiple promissory notes.  Gray answered and filed a counterclaim against MFC and a crossclaim against The Jerry and Vickie Moyes Family Trust.

¶3   MFC and Gray's claims arose out of a series of business transactions involving Xeptor, LLC, a company organized to own and manage fitness gyms in Maricopa County.

¶4   At a settlement conference on September 16, 2014, MFC and Gray entered into a written settlement agreement.  A term of that agreement, analyzed at length below, called for Gray to provide MFC with additional financial information.  On September 19, Gray communicated to MFC that he was unable to provide a verified financial statement as agreed, and that he had changed his mind about the settlement.

¶5   MFC filed a motion to enforce the settlement agreement, notwithstanding Gray's failure to provide the financial statement.  MFC argued that the term requiring Gray to provide a financial statement was for MFC's sole benefit and therefore MFC was entitled to waive it.  Gray opposed the motion.  The trial court granted the motion to enforce the

_____

[1]  The Honorable Edward W. Bassett, Judge of the Arizona Superior Court has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

settlement agreement, dismissed the counterclaim and crossclaim, and entered final judgment.

¶6        Gray timely appeals from the signed final judgment. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (5)(a) (2016).[2]

## DISCUSSION

¶7        Gray argues that the superior court erred by 1) granting the motion to enforce the settlement agreement and 2) denying Gray's motion to amend his counterclaim. We address only the first issue, which is dispositive. We also address MFC's request for attorney's fees on appeal.

## I.        Enforcement of the Settlement Agreement.

¶8        Interpretation of a settlement agreement is a question of law, which we review *de novo*. *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, 119, ¶ 5, 75 P.3d 1075, 1077 (App. 2003); *Burke v. Arizona State Ret. Sys.*, 206 Ariz. 269, 272, ¶ 6, 77 P.3d 444, 447 (App. 2003).

¶9        Construction and enforcement of settlement agreements are governed by general contract principles. *Emmons v. Superior Court In & For County of Maricopa*, 192 Ariz. 509, ¶ 14, 968 P.2d 582 (App. 1998). "It has always been the policy of the law to favor and encourage the resolution of controversies through compromise and settlement rather than through litigation." *Mustang Equip., Inc. v. Welch*, 115 Ariz. 206, 211, 564 P.2d 895, 900 (1977). A contract "must be read as a whole in order to give a reasonable and harmonious meaning and effect to all of its provisions." *Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 356, 857 P.2d 406, 408 (App. 1993) (quoting *Droz v. Paul Revere Life Ins. Co.*, 1 Ariz. App. 581, 583, 405 P.2d 833, 835 (1965)).

¶10        The agreement the parties executed at the conclusion of their settlement conference sets forth the caption, court and case number, and bears the signatures of both parties and respective counsel. The agreement sets forth the parties' exchange of promises as follows: Gray agrees to pay $500,000 and to dismiss his counterclaims; MFC agrees to dismiss its claims; and the parties are to bear their own fees and costs. The final paragraph of the four-paragraph agreement tasks the parties' counsel with executing a

---

2        Absent material revision after the relevant date, we cite a statute's current version.

more specific agreement and preparing any other documents necessary to effect the settlement.

¶11        Gray's argument on appeal focuses on the first paragraph of the agreement, which states in full:

> After attending a settlement conference with Judge Pro Tem, James B. Bowen, on September 16, 2014, the parties through their respective counsel agree to settle all disputes contingent upon Defendant John Gray providing Plaintiff MFC Investments, LLC ("MFC") a statement verified by his California licensed CPA that the financial statement of John and Bonnie Gray's community property is true and accurate, with the exceptions agreed to in the settlement negotiations. Should the verified financial statement be unsatisfactory to MFC, no settlement will occur.

¶12        Gray first asserts that, under this paragraph, no contract for settlement ever formed.  He contends that because he did not provide a "statement verified by his California licensed CPA," the parties' obligations under the remainder of the agreement never arose.  We disagree.  "A party to the contract cannot prevent the fulfillment of a condition precedent and later rely on the failure of the condition to argue that no contract exists." *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 471, 967 P.2d 607, 612 (App. 1998).  This accords as well with the principles that a contract should not be interpreted to "reserve[] the right to cancel the agreement at will," *Shattuck v. Precision-Toyota, Inc.*, 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977), or in a way that would "make the contract illusory." *Cent. Arizona Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1128 (D. Ariz. 1998).

¶13        If providing a verified financial statement was a condition of formation of the contract, it was frustrated by Gray himself. Three days after the settlement conference, Gray's counsel sent an email stating that after consulting an accountant, his client had "reconsidered his position and is not able to move forward with a commitment" of payment.  Later, at his deposition, Gray stated, "I changed my mind" regarding the settlement.

¶14        These facts distinguish this case from *Cavazos v. Holmes Tuttle Broadway Ford, Inc.*, 104 Ariz. 540, 456 P.2d 910 (1969), on which Gray principally relies.  In *Cavazos*, our supreme court held the refusal of a credit union to provide financing to a buyer was a condition that failed and prevented the formation of a sales contract between the buyer and the automobile dealer. *Id.* at 543.  That is, the condition went unfulfilled due to

the action of a third party rather than one of the parties to the contract. *Id.* In this case, Gray himself repudiated the contract before he provided a financial statement to MFC because of his own change of mind.

¶15 Alternatively, Gray argues that if a contract were formed, providing a verified financial statement was a condition of his own performance under it. Thus, he argues, because he did not provide the statement, further performance required of him - his payment and dismissal of any counterclaims - was excused.

¶16 The trial court found that furnishing a verified financial statement was not a condition of the parties' performance, but rather Gray's contractual duty. Arizona law supports construing a contract term as creating a duty to perform, rather than as a condition precedent to performance. *See Able Distrib. Co., Inc. v. James Lampe, Gen. Contractor*, 160 Ariz. 399, 403, 773 P.2d 504, 508 (App. 1989) ("[A] contractual provision generally should not be construed as a condition precedent unless the provision plainly and unambiguously requires such construction."); *see also* Restatement (Second) of Contracts § 227 (1981).

¶17 Like the trial court, we conclude that the provision requiring a verified financial statement satisfactory to MFC was Gray's duty and a condition of MFC's performance.[3] As such, it was a condition that MFC could waive. The party to whose benefit the obligation flows can waive a contractual obligation. *Nelson v. Cannon*, 126 Ariz. 381, 384, 616 P.2d 56, 59 (App. 1980). Determining which party benefits from a contractual provision is a matter of ascertaining who the condition was meant to protect. *Pruitt v. Pavelin*, 141 Ariz. 195, 204, 685 P.2d 1347, 1356 (App. 1984). That can readily be seen from the entire contract: MFC was agreeing to withdraw claims in exchange for Gray's promise to pay money. Verification of Gray's financial statement, by an accountant and to MFC's

---

[3] Much of the parties' argument on appeal is consumed by the issue of whether there were one or two conditions (or "contingencies," in the terminology of the agreement) to be fulfilled. The trial court found only one condition, set forth in the final paragraph, that MFC be satisfied with the verified financial statement. Whether providing the financial statement is likewise a condition is ultimately immaterial because it too could be waived by MFC. To state it plainly: If MFC was entitled under the agreement to waive a requirement that it be satisfied by the financial statement, MFC was obviously entitled to proceed without any statement at all.

satisfaction, was an obvious way of assessing his ability to perform and the wisdom of MFC's decision to settle at the specified price.

¶18    Gray argues that the requirement to provide a verified financial statement was a condition that benefited both parties, and could not be waived by MFC alone. *See Concannon v. Yewell*, 16 Ariz. App. 320, 321, 493 P.2d 122, 123 (1972) (stating that a contracting party may waive provisions in a contract which are solely for his benefit). However, Gray offers no persuasive explanation of how the provision benefited him. Instead, Gray cites to an exchange with opposing counsel that merely supports the conclusion that the entire agreement was beneficial to him - unremarkable for a settlement of a lawsuit. The argument that the purpose of the certified financial statement was to inform Gray of his own ability to perform is undermined by the language of the agreement itself, which required that MFC be satisfied by the statement, but omitted any comparable requirement that Gray likewise be satisfied. In short, the provision evidences the parties' intent that the provision was only meant to benefit MFC.

¶19    Gray also argues that MFC's waiver of a verified financial statement was untimely. The argument is elliptical: because Gray did not obtain a verified financial statement, he contends, no contract was formed and hence there was no condition in the contract for MFC to waive. We have already dealt with the argument that no contract was formed, finding it without merit because Gray himself frustrated the provision at issue. This same analysis disposes of his waiver argument.

¶20    Finally, for the first time in his reply brief, Gray argues that extrinsic evidence supports his interpretation of the contract. The extrinsic evidence is the "settlement conference" report issued by Judge Pro Tem Bowen after the parties signed their agreement. Gray emphasizes Judge Pro Tem Bowen's description of the result of the settlement conference as "a tentative agreement . . . contingent upon Defendants providing Plaintiff additional financial information."

¶21    We disagree that Judge Pro Tem Bowen's report is significant. The report does no more than inform the trial court of the state of the case assigned for settlement conference: That it was settled tentatively, but not yet conclusively. That is indisputably accurate and likely was helpful for purposes of judicial calendar management. Judge Pro Tem Bowen's report to the trial court plays no role in our construction of the settlement agreement.

## II.    Attorney's Fees on Appeal.

**¶22**       MFC seeks an award of attorney's fees on appeal pursuant to A.R.S. § 12-341.01.  This case arises under contract - the promissory notes - and MFC is the prevailing party.  We reject Gray's argument that because the settlement agreement itself provided that each party would bear its own fees and costs, MFC's claim for fees is barred.  That provision of the settlement agreement was premised on the parties' abiding by their agreement, not upon one of them repudiating it.  Nothing in the agreement precludes the application of A.R.S. § 12-341.01 under that circumstance.

**¶23**       In the exercise of our discretion, MFC is awarded its fees and costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶24**       Based on the foregoing, we affirm the judgment of the trial court.



AMY M. WOOD • Clerk of the Court
FILED:  AA