**In re WAVERLY ACCIDENT OF FEBRUARY 22–24, 1978.**

**Jewel Lorene FLOROW**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY et al.**

Nos. 78–3119–NA–CV, 78–3399–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

June 11, 1979.

J. D. Lee, Madisonville, Tenn., for plaintiff.

George B. McGugin, William R. Willis, Jr., Tyree B. Harris, Walter H. Crouch, D. L. Lansden, Thomas H. Higgins, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

On February 22, 1978, a Louisville & Nashville train derailed within the city limits of Waverly, Tennessee. Two days later, while the process of clearing the tracks continued, a tank car containing liquid petroleum gas ruptured, and the resulting fire caused a number of injuries and deaths, as well as significant property damage. Plaintiff, whose decedent husband was among those killed in the accident, filed suit against movant Louisville & Nashville Railroad Company (hereinafter referred to as L & N) and several other defendants (hereinafter referred to as respondents). Respondents filed cross–claims against movant L & N claiming that if plaintiff obtains a judgment against them, they will be entitled to contribution from movant. In opposition to that claim, movant L & N asserts

that because it has entered into a settlement agreement with plaintiff, it has been discharged from all liability for contribution to respondents under Tennessee Code Annotated section 23–3105(b).[1] Respondents contend that the settlement agreement violates public policy and should be invalidated by this court. The issue of whether the agreement is valid under T.C.A. § 23–3105 is presently before the court on movant L & N's motion for partial summary judgment dismissing respondent's claim for contribution.

In February 1979, plaintiff and movant L & N completed negotiations that culminated in the settlement agreement between them. Under the terms of the contract, the parties stipulated that the fair settlement value of plaintiff's claim was $100,000, and L & N agreed to lend promptly one–third of that amount, $33,333.33, to plaintiff.[2] If plaintiff chose not to pursue her claim against one or more of the respondents, she would be allowed to retain the $33,333.33 but would be required to absolve movant L & N from any further liability. In the alternative, if plaintiff chose to pursue to final judgment her claims against movant L & N and one or more of the respondents, movant guaranteed that the total sum recovered by plaintiff would not be less than $100,000. For purposes of this memorandum, the court has assumed that plaintiff has chosen to pursue this latter course, referred to in the contract as the "second option."

According to the guaranty provision of the second option, if after trial on the merits the jury returned a verdict in favor of defendants, or if verdict were rendered only against movant L & N, then L & N would pay plaintiff $66,666.67, the difference between the $33,333.33 already paid to plaintiff and the amount of the guaranteed recovery, in total satisfaction of plaintiff's claim or judgment. If judgment were obtained against any of the respondents, irrespective of whether or not verdict were also rendered against L & N, then the $33,333.33 payment would be applied to the judgment in satisfaction of L & N's entire liability on the judgment, unless, however, the judgment were for less than $100,000, or if plaintiff were unable to collect from respondents the difference between L & N's $33,333.33 payment and the guaranteed sum of $100,000. In that event, movant L & N would be liable to pay an amount sufficient to make plaintiff's total recovery equal to the guaranteed amount.

Movant's obligation under the guaranty provision was subject to certain further conditions. First, plaintiff would be allowed to settle her claims against any of the respondents without the consent of L & N only if the settling respondent paid $33,333.33 or more. Second, after a verdict has been rendered, plaintiff would be prohibited from settling without the consent of L & N for any amount with any respondent

1. Tennessee law is applicable in this case because the court's jurisdiction is based upon diversity of citizenship.

T.C.A. § 23–3105 provides:
When a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death;
(a) It does not discharge any of the other tort–feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
(b) It discharges the tort–feasor to whom it is given from all liability for contribution to any other tort–feasor.

(c) No evidence of a release or covenant not to sue received by another tort–feasor or payment therefor may be introduced by a defendant at the trial of an action by a claimant for injury or wrongful death, but may be introduced upon motion after judgment to reduce a judgment by the amount stipulated by the release or the covenant or by the amount of the consideration paid for it, whichever is greater.

2. The "loan" was in effect an absolute payment of $33,333.33. Neither a provision for interest nor for repayment appear in the agreement. Movant's counsel has affirmatively represented to this court that movant was not to be reimbursed for this amount. See Transcript, Hearing of May 2, 1979, at 26.

**3**

against which the verdict was rendered. Third, plaintiff would be required to make a reasonable effort to collect any judgment obtained against respondents including resisting post–trial motions and appeals, making appropriate demands upon insurance carriers, and levying execution upon property. Fourth, plaintiff would be prohibited from enforcing any judgment against L & N.

Under other terms of the contract, plaintiff agreed that she would enter into an identical agreement with any of the respondents who so desired, that the amount received under such agreement would reduce *pro tanto* L & N's liability under the guaranty provision, and that the settling respondent would become equally responsible with L & N for the remainder of the guaranteed amount. The contract further stated unequivocally that it was not to be construed as a release of any of plaintiff's claims against any party and that the intention of plaintiff was to pursue her claims against all parties. Finally, the contract provided that movant L & N's maximum liability would in all circumstances be absolutely limited by its obligation under the guaranty provision.

In essence, the second option of the settlement agreement consists of a covenant by plaintiff that she will not enforce any judgment obtained against movant L & N. In exchange for this covenant, L & N has made an absolute payment of $33,333.33 and has given a conditional guaranty that plaintiff will ultimately receive an additional $66,666.67 for her claim. To make the guaranty operative, plaintiff must pursue her claims to final judgment against all possible defendants, including L & N, and must take any settlements with any of the respondents only in accordance with certain restrictions established by L & N. Once the guaranty provision is triggered, movant L & N's obligation to pay any of the additional $66,666.67 will be diminished by any amounts received from respondents. Therefore, it is possible that L & N's obligation under the guaranty provision will be satisfied totally by payments to plaintiff from respondents.

Tennessee Code Annotated section 23–3105, which is also section four of the Uniform Contribution Among Tortfeasors Act,[3] provides in pertinent part that "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one (1) of two (2) or more persons liable in tort for the same injury or the same wrongful death [:] . . . (b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tort–feasor." Under this statute, therefore, a settlement agreement will relieve the settling tortfeasor of his duty to make contribution to the other tortfeasors only if the agreement was entered into in good faith.

Movant L & N contends that it has satisfied the good faith requirement in several respects. First, movant claims that by paying plaintiff $33,333.33, for which it will never be reimbursed, it has acted in accord with the spirit of T.C.A. § 23–3105(a), under which nonsettling tortfeasors receive *pro tanto* credit against plaintiff's claim against them for all amounts paid by the settling tortfeasor. By contrast, a bad faith settlement, according to movant, would be an agreement, such as a "Mary Carter" or a loan receipt agreement, in which the settling tortfeasor's obligation to pay any money is contingent upon plaintiff's failure to obtain a judgment in a certain amount against other tortfeasors. *See, e. g., City of Tucson v. Gallagher,* 108 Ariz. 140, 493 P.2d 1197 (1972) ("Mary Carter"); *Ward v. Ochoa,* 284 So.2d 385 (Fla.1973) (same); *Booth v. Mary Carter Paint Co.,* 202 So.2d 8 (Fla.App.1967) (same); *Reese v. Chicago, Burlington & Quincy Ry. Co.,* 55 Ill.2d 356, 303 N.E.2d 382 (1973) (loan receipt); Annot., 65 A.L.R.3d 602 (1975) ("Mary Carter"); Annot., 62 A.L.R.3d 1111 (1975) (loan receipt). Movant believes that such agreements, under which nonsettling tortfeasors may receive no credit against plaintiff's claim because the settler may actually pay nothing, would defeat the purpose of § 23–3105(a) by contravening the statutory goal

---

**3.** Subsection (c) of the Tennessee enactment, however, is not contained in the Uniform Act.

of equitably distributing among all tortfeasors the burden of compensating plaintiffs for their damages. Second, L & N contends that it has satisfied the requirement of good faith because prior to executing the agreement with plaintiff, L & N made full disclosure of the agreement to respondents and offered them an opportunity to enter into the agreement as well. In addition, movant claims that it extracted a promise from plaintiff, included in the agreement, that she would settle with any respondent on the same basis and the same terms as with L & N. Third, L & N argues that the good faith of the transaction is demonstrated by the fairness and reasonableness of the amount paid by L & N. The contracting parties agreed that plaintiff's total claim against all possible defendants was worth $100,000 in settlement, and L & N paid plaintiff one–third of that amount. L & N contends that since under T.C.A. § 23–3103 each tortfeasor is liable only for a pro rata share of the total damages, then even if only two of the seven respondents are also liable to plaintiff, L & N has paid a full pro rata share.

Unfortunately, no Tennessee decisions have defined the term "good faith" for purposes of T.C.A. § 23–3105(b). According to the comment of the Uniform Law Commissioners, who drafted the statute, "[t]he requirement that the release or covenant be given in good faith gives the court occasion to determine whether the transaction was collusive and if so there is no discharge [under the statute]." *See* Commissioners' Comment to Section 4(b), Uniform Contribution Among Tortfeasors Act, 12 *Uniform Laws Annotated* 99 (1975) (emphasis added) [hereinafter cited as Commissioners' Comment]. In *River Garden Farms, Inc. v. Superior Court for County of Yolo*, 26 Cal. App.3d 986, 103 Cal.Rptr. 498 (1972),[4] however, the court stated that

> Although the Uniform Law Commissioners pointed to collusion as the prime motivator of the good faith clause, the language of the clause is far broader. Lack of good faith encompasses many kinds of behavior. . . . When profit is involved, the ingenuity of man spawns limitless varieties of unfairness. Thus, formulation of a precise definition of good faith is neither possible nor practicable.

*Id.* at 997, 103 Cal.Rptr. at 505–06. The court recognized that whether a settlement has been the product of good faith or bad faith is a question of fact to be determined in each case, but indicated that the decision should be made with reference to the purpose of the good faith clause: to aid the twin statutory objectives of equitable sharing of the burden of compensating plaintiffs and of encouraging settlements. Therefore, agreements that attempt to sidetrack these policies do not satisfy the good faith requirement. Such agreements as well as collusive agreements cannot discharge the settling tortfeasor from his obligation of contribution under § 23–3105(b).

It may well be that this settlement agreement has promoted the policy of equitable sharing. Movant has paid plaintiff one–third of the amount for which she was willing to settle her entire claim. At this point it is impossible for anyone to prognosticate which, if any, of the respondents will be found liable by the jury, and so no one can know whether one–third is an appropriate portion for movant to pay. Because of this very unpredictability, however, the court would be inclined to hold that the amount of the settlement is fair and sufficient. *See, e. g., River Garden Farms, supra,* 26 Cal.App.3d at 997, 103 Cal.Rptr. at 506. Moreover, the agreement assures that respondents will get the benefit of T.C.A. § 23–3105(a), which reduces their liability by the amount paid by the settler. Were these the only considerations, or were the agreement simply a release of L & N in exchange for the payment of $33,-333.33 with no further conditions, the court would probably uphold the contract's validity.

---

4. In *River Garden Farms*, the court was dealing with a statute patterned after the Uniform Contribution Among Tortfeasors Act that is virtually identical to T.C.A. § 23–3105(b). *See River Garden Farms, Inc. v. Superior Court for County of Yolo,* 26 Cal.App.3d 986, 995, 103 Cal. Rptr. 498, 504 (1972).

For several reasons, however, the court believes that the agreement does not satisfy the requirement of good faith. First, the agreement frustrates the statutory goal of encouraging settlements. Plaintiff's "second option" requires her to surrender a great measure of control over settlement negotiations with respondents in order to obtain movant's guaranty of a $100,000 recovery. She cannot settle with any single respondent for less than $33,333.33 without L & N's approval. She cannot settle for more than that amount unless the settling respondent is willing to assume one–half of the responsibility of the guaranty provision. While judicial approval of this arrangement may encourage tortfeasors to race to a plaintiff to enter an agreement that would give the settler control over settlement negotiations with other tortfeasors, it would not advance the broader policy of encouraging plaintiffs to settle their entire claims with all tortfeasors, to reduce litigation, and to ease the burden on the courts. As in the present case, co–defendants are less likely to settle their cases on the settling defendant's terms than to litigate. Furthermore, because L & N has control over the settlement terms, its inviting respondents to join in the agreement or to enter separate contracts with plaintiff has not, in any real sense, promoted the policy of encouraging settlements. Moreover, the agreement actually has the effect of fomenting litigation. It requires plaintiff to pursue to final judgment her claims against all of the respondents.[5] It even requires plaintiff to continue her lawsuit against L & N although there remains no actual controversy between them.[6] In no way has this agreement saved this court or these parties one minute of court time or one dollar of litigation expenses. The agree-ment thoroughly contravenes the policy of encouraging settlements and thus fails to meet the requirement of good faith.

Second, the agreement does not satisfy the good faith requirement because it is collusive. *See* Commissioners' Comment, *supra.* Collusion, according to the Tennessee Supreme Court, is an "agreement between two or more persons . . . to obtain an object forbidden by law." *See Neal & Kennedy Co. v. Ellis,* 138 Tenn. 216, 197 S.W. 489 (1917). Through the agreement in the present case, movant has attempted to obtain contribution from the respondents to satisfy its guaranty obligation, an object prohibited by T.C.A. § 23–3102(d). That statute provides that a "tort–feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort–feasor whose liability for the injury or wrongful death is not extinguished by the settlement . . . ." As an integral part of the consideration given by movant in exchange for plaintiff's covenant not to enforce judgment, movant has promised that plaintiff will receive at least $100,000 after judgment. Movant's obligation to pay plaintiff this amount, however, will be reduced or, perhaps, totally satisfied by amounts paid to plaintiff by respondents either voluntarily or as the result of judgments against them. Thus, movant will have indirectly obtained contribution from respondents even though the agreement did not extinguish their liability. Clearly this violates the express prohibition of T.C.A. § 23–3102(d). In *Alder v. Garcia,* 324 F.2d 483 (10th Cir. 1963), the court found that an agreement that achieved a similar result was void and unenforceable under the Uniform Contribution Among Tortfeasors Act. Furthermore, the court stated that the Act provides a mechanism by which the settling

5. According to the language of the contract, if plaintiff decides "not to pursue by trial to a final judgment *its claim against one . . . of the* [respondents]," she is entitled only to proceed under the less attractive "option one" and loses the benefits of the guaranty provision and other features of "option two." *See* Motion of Defendant, Louisville & Nashville Railroad Company for Partial Summary Judgment, Exh. B, at 3 (filed Mar. 19, 1979).

6. Under "option two," plaintiff must pursue "to a final judgment its claims against Louisville & Nashville Railroad Company *and* [respondents]." *See* Motion of Defendant, Louisville & Nashville Railroad Company for Partial Summary Judgment, Exh. B, at 3 (filed Mar. 19, 1979) (emphasis added).

tortfeasor could have reached the same result properly. The same is true in Tennessee. Under T.C.A. § 23–3104(d), movant could have paid plaintiff $100,000 in settlement of her claims against all possible defendants, as plaintiff was apparently willing to do, and then L & N could have brought an action against respondents to obtain contribution. The court would note that movant is aware of and has availed itself of this procedure in other cases arising out of the Waverly accident. *See Louisville & Nashville R. Co. v. Union Tank Car Co.,* No. 79–3086–NA–CV (M.D.Tenn., filed Feb. 20, 1979). Movant's attempt to defeat the operation of these statutes, by contrast, is collusive, and the agreement therefore cannot discharge movant from its duty of contribution to the respondents.

Finally, the court is disturbed that the agreement requires plaintiff to continue to prosecute her action against movant even though the controversy between them is settled.[7] Such a situation has a tendency to work a fraud on the court, especially in a jury case in which the jury is not informed of the settlement agreement, because the true positions of the parties are concealed. *See, e. g., Pellet v. Sonotone Corp.,* 26 Cal.2d 705, 160 P.2d 783 (1945); *Ward v. Ochoa,* 284 So.2d 385 (Fla.1973); *Lum v. Stinnett,* 87 Nev. 402, 488 P.2d 347 (1971). In the classic case, such as the present one, the settling tortfeasor has agreed with plaintiff that its maximum liability will be reduced by such amounts as may be received from the other tortfeasors. Thus the settler presents itself to the jury as a bona fide defendant even though its real interest in the case is to increase the amount of the verdict against the co–defendants so that its own exposure will be diminished or extinguished. *See, e. g., Sequoia Manufacturing Co. v. Halec Construction Co.,* 117 Ariz.

11, 570 P.2d 782 (Ariz.App.1977). It is apparent to this court that such a situation offers great temptation to the settler to sabotage co–defendants' cases. Movant contends, however, that when the settler's trial tactics are unaffected by the agreement, no such problem arises. *See, e. g., id.* Movant claims that the present agreement has had no effect upon its trial tactics because it has always intended to emphasize the liability of respondents. This view, however, overlooks the peculiar posture of this litigation. Liability in the instant case will be determined in one or two "test cases" arising out of the Waverly accident, and this case will be submitted to the jury only for a determination of whether plaintiff is entitled to recover and, if so, in what amount. Therefore, movant's proposed trial strategy of emphasizing respondents' liability will be irrelevant. Movant's real interest, as a result of the agreement, will be to insure that plaintiff will recover an amount that will relieve L & N from liability for the guaranteed amount. It is crystal clear that L & N's interest would be very different in the absence of the agreement because L & N would then be equally liable for the damage award.

Some courts permit the settler to remain in the case as plaintiff's apparent adversary only if the settlement agreement is revealed to the jury. *See, e. g., Ward v. Ochoa, supra.* This is thought to counteract any prejudice that may be present at trial because the jury can weigh the settler's testimony and his counsel's arguments with the agreement in mind. In Tennessee, although entering evidence at trial of a release or covenant not to sue is expressly prohibited by T.C.A. § 23–3105(c), there is a substantial question as to whether a cove-

7. The court believes that this also brings the case dangerously close to a "collusive action," a contrived lawsuit in which there are no actual disputes between the parties. Were it such, the court would be required to dismiss the case, because "[e]ven in a litigation where only private rights are involved, the judgment will not be allowed to stand where one of the parties has dominated the conduct of the suit by pay-

ment of the fees of both." *See, e. g., United States v. Johnson,* 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed.2d 1413 (1943); *Gardner v. Goodyear Dental Vulcanite Co.,* 131 U.S.Appendix ciii, 21 L.Ed. 141 (1873); *First National Bank in Mena v. Nowlin,* 374 F.Supp. 1037, 1038 n.1 (E.D.Ark. 1974). This further demonstrates the need to invalidate the agreement.

nant not to enforce judgment can be introduced. The court does not feel compelled to resolve this difficult question of state law, nor to determine whether or not an agreement that requires the contracting parties to present an illusory controversy to the jury would fail for that sole reason to satisfy the requirement of good faith under § 23–3105(b). The court does believe that this aspect of the instant agreement, combined with the infirmities already discussed, provide ample reason to invalidate the agreement in toto and to hold that it does not discharge movant from its obligation of contribution to respondents.

The court must still determine the position of the parties with respect to the prior $33,333.33 payment. It appears that the best solution is to allow plaintiff to retain that sum as an advance payment on any judgment that may be rendered against L & N. If this is in excess of L & N's pro rata share of the judgment, then L & N may sue respondents for contribution. Furthermore, although the guaranty provision is void as a result of this decision, movant may find that plaintiff remains willing to settle her entire claim for $100,000. If so, movant may wish to pay plaintiff the additional $66,666.67, obtain from her a release of all respondents, and then seek contribution from respondents. Such a course would certainly comport with the spirit, as well as the letter, of the Uniform Contribution Among Tortfeasors Act.

An appropriate order will be entered.