[Civil No. 2774. Filed April 9, 1929.]

[276 Pac. 322.]

EUGENE MIDDLETON and ELVIRA MIDDLETON, Appellants, v. LAURA ALICE GREEN, Appellee.

See Evidence, 22 **C. J.**, sec. 805, p. 717, n. 21, sec. 813, p. 723, n. 95, p. 724, n. 3, sec. 823, p. 728, n. 71.
Landlord and Tenant, 36 **C. J.**, sec. 877, p. 206, n. 67.
Trial, 38 **Cyc.**, p. 1316, n. 33.
Witnesses, 40 **Cyc.**, p. 2506, n. 10.

Mr. Charles L. Rawlins and Mr. George H. Rawlins, for Appellants.

Messrs. Elliott & Snell, for Appellee.

McALISTER, J.—The defendants were the owners of the "Middleton apartments" in Globe, Arizona, and on May 3d, 1927, rented apartment No. 11 thereof to the plaintiff and her son, Albert E. Green, who moved into it that day. There was at that time an outside step at the rear entrance to this apartment, and in the afternoon of the day plaintiff moved in she started out of the apartment through this entrance, and in attempting to step out placed her foot on this step, with the result that it turned over and threw her to the ground with great force, causing painful and severe injuries to her body, among which were broken ribs. She filed suit for damages and recovered judgment for $2,000, and it is from this judgment, entered upon the verdict of the jury, as well as from the order denying their motion for a new trial, that defendants appeal.

The facts upon which plaintiff relies to show negligence on the part of defendants are stated in this language:

"That at the time defendants rented said apartment to plaintiff and plaintiff's son, defendants negligently permitted and allowed to exist a nuisance and dangerous condition in and on said premises and said apartment, in that the outside doorstep, which consisted of one raise, to the rear or southerly entrance in said apartment No. 11, and which step was provided by defendants for egress and ingress to said apartment through said rear entrance, was loose and not nailed, and because of such condition was capable of turning and slipping in a dangerous manner; that at the time defendants rented said apartment to plaintiff and plaintiff's son, defendants knew the condition of said step, and were aware of its dangerous

nature; that defendants did not advise plaintiff or plaintiff's son at any time of the dangerous condition of the said step."

The answer is a general demurrer and a general denial; and the first assignment is that the court erred in overruling the demurrer. The action is one for personal injuries, which, it is alleged, resulted from defendants negligently permitting and allowing to exist on the premises "a nuisance and dangerous condition," in that the outside doorstep at the rear entrance of the apartment, which was provided by the defendants for the use of those entering and leaving the apartment through this door, "was loose and not nailed, and because of such condition was capable of turning and slipping in a dangerous manner."

Appellant contends that the allegation that the doorstep constituted "a nuisance and dangerous condition" is a mere conclusion of law, and that the facts specially pleaded to show that a nuisance and dangerous condition did exist are not sufficient. It is claimed that the statement that the step was "loose and not nailed" does not have this effect, and that the other averment relied on for this purpose, "and because of such condition was capable of turning and slipping in a dangerous manner," is likewise a mere conclusion. Whether these special averments show the existence of "a nuisance and dangerous condition" is immaterial if they sufficiently disclose facts which, if true, would constitute negligence on the part of the defendants. Eliminating this expression as a conclusion the following allegations remain: That the defendants, the owners of the building, negligently permitted to exist on the premises in question at the rear entrance of apartment No. 11 an outside doorstep, used for going in and out of said apartment, which "was loose and not nailed, and because of such condition was capable of turning and slipping in a

dangerous manner''; that defendants knew the dangerous condition of this step when they rented the apartment to plaintiff, but did not advise her or her son of it. It occurs to us that when the owner of a building, who knowingly permits to remain at one of its entrances for the use of those going in and out of it a doorstep that is loose and unnailed and due to this condition may turn and slip in a manner that is dangerous to those using it, fails to advise those to whom he rents it of the existence of this condition he is guilty of negligence and liable for any damage ; that may result therefrom. The facts, perhaps, could have been stated with more definiteness, but they appear sufficiently to enable the court to understand how the accident occurred, and therefore to determine whether the complaint states a cause of action.

Appellants contend, further, however, that in the absence of express contract to the contrary, or a statute, a tenant takes demised premises as he finds them, and that no implied warranty by the landlord that they are safe or fit for the purpose for which they are hired exists. In other words, the maxim *caveat emptor* applies. This is the general rule, but to it there is a well-recognized exception which applies to the facts of this case and is stated by Underhill on Landlord and Tenant, volume 2, page 792, in this language:

''The landlord who lets the premises in a dangerous condition or with an existing nuisance thereon, or relets them after the tenant has created a nuisance thereon may be liable for injuries resulting from the dangerous condition or nuisance. The rule is not confined to what may be called technically a nuisance. It extends to any unsafe or dangerous condition of the premises. Thus, the owner of premises who, knowing them to be unsafe and dangerous, demises them in that condition without providing for their repair will be liable for damages which are caused by

the injury which is the natural consequence of their dangerous condition.''

See, also, the following: 16 R. C. L. 1035, 1042, 1069 and 1078; *Murrell* v. *Crawford,* 102 Kan. 118, 169 Pac. 561; 36 C. J. 206, § 877 cc; *Willcox* v. *Hines,* 100 Tenn. 538, 66 Am. St. Rep. 770, 41 L. R. A. 278, 46 S. W. 297; *Mesher* v. *Osborne,* 75 Wash. 439, 48 L. R. A. (N. S.) 917, 134 Pac. 1092.

Appellee was injured May 3d, and on the 30th of June and of August following she was examined by Dr. C. E. Irvin, of Miami, who testified as an expert relative to his findings. He stated upon direct examination that when she came to his office she told him she had been injured by a fall and had two broken ribs on the right side, and that with this in mind he examined her to determine the extent of her injuries, though he could not tell then—nearly two months after the injury—whether she had had broken ribs or not because the evidence of it was not there at that time. Thereupon counsel for defendants inquired on cross-examination: ''How could you connect up this injury to the date of the fall?'' This was objected to by counsel for plaintiff as calling for a conclusion, and the objection was sustained. Following this the doctor testified that he arrived at the extent of the injury described by him from his own examination, but that he could not say definitely how long the injury had been there, though there were still soreness and pain in the region of the lower ribs and sacroiliac joints. He then said that plaintiff was brought to his office by her relatives, but her attorney, Mr. Snell, asked him to examine her, whereupon counsel inquired: ''And he came to your office and made the date for this woman to be examined, did he, Mr. Snell?'' An objection to this being sustained, counsel for defendants asked further: ''The first person that told you about the injury was Mr. Snell?''

And plaintiff's objection to this was likewise sustained, the court remarking that he thought the question was improper and that he was "going to assume this witness would not be here testifying upon something the attorney told him. He is testifying to the conditions as he found them." After contending that this fact could not be assumed before it became a part of the record and that defendants had the right to cross-examine the expert "as to how many told him, who told him, and what they told him," counsel asked the doctor the direct question: "Did Mr. Snell tell you about the condition of Mrs. Green before she came there?" And the court sustained an objection to this (according to his language) upon "the theory that this witness would not be guided by what the attorney told him, but would be guided by what he found on examination."

The second, third and fourth assignments are based upon these rulings and the reasons given therefor, and inasmuch as they raise but one proposition, and have been treated together by the parties, we will do the same.

Under the authorities the opinion or conclusion of an expert may not be received in evidence if it is based, even in part, on the statements outside the courtroom, since in that event it would depend upon hearsay. *Hintz* v. *Wagner*, 25 N. D. 110, 140 N. W. 729; *Security Benefit Assn.* v. *Small*, 34 Ariz. 458, 272 Pac. 647. And this is true even though the statements are the history of the case and made by the plaintiff, though "a physician may properly testify to statements made by the patient relating to his condition at the time" of his examination. *Hutchinson* v. *Missouri Pac. Ry. Co.*, (Mo. App.) 288 S. W. 91. Such being the law, it is apparent that in propounding the foregoing interrogatories the purpose of counsel was to ascertain from the expert, Dr. Irvin, whether he was testifying from what he found

as a result of his own examination, or whether he was basing his opinions, even in part, upon information someone else may have given him concerning the injury. Having stated that he arrived at his conclusions from his own examination, the court, acting upon the assumption that he would not testify upon something the attorney told him but only to the conditions as he found them, declined to permit further cross-examination upon this phase of the case, and defendants contend that, inasmuch as the expert could not, in any degree, base his opinions and conclusions as to plaintiff's injuries upon anything she, her attorney, or anyone else may have told him, they had a right, not being bound by the statement of a witness for plaintiff, to examine him fully as to the source of his information, and to deprive them of this right constituted prejudicial error. This contention, it occurs to us, is well-founded, because, even though the court was entirely correct in assuming the truth of the testimony, this did not justify it in acting upon the assumption to the extent of depriving the defendants of their right to test its accuracy by throwing upon it the searchlight of a full cross-examination. The jury was the judge of its weight and not the court, and the latter's acceptance of it without further question did not obligate the defendants or the jury to place the same value upon it. It having been stated by the witness that plaintiff told him she had two broken ribs on the right side and that her attorney had asked him to examine her, the defendants were clearly within their rights in attempting to pursue the matter sufficiently to satisfy themselves and the jury whether anything else had been said that might have been considered by him, even unconsciously, in arriving at the opinions he expressed.

The plaintiff contends, however, that because the expert had testified as to the source of his information

and placed in evidence all the facts relative thereto, no further cross-examination of him was necessary and the court was justified in doing what it did—exercise its discretion to limit it. Trial courts, it is true, do have a wide discretion in the matter of limiting or extending the cross-examination of an expert, or any other witness, as to collateral matters (*Anderson* v. *Salt Lake & O. Ry. Co.*, 35 Utah 509, 101 Pac. 579); but this does not mean that they may deny cross-examination altogether. In fact the rule is that the cross-examination of an expert, who is a witness of superior knowledge of the subject about which he testifies, should be liberalized rather than restricted (*Levine* v. *Barry*, 114 Wash. 623, 195 Pac. 1003), though if defendants were bound by the answer of the doctor on either direct or cross-examination that he was basing his opinions on his own findings and could not pursue the matter further because in the judgment of the trial court it was true, they were not merely restricted in, but for practical purposes denied, the right of cross-examination on a material matter. Whether the answers to the questions would have disclosed that the witness was or might have been influenced in his opinions by facts gained from other sources than his own examination we do not know, and for this reason cannot say that they were without harmful effect; but, regardless of this it is clear that defendants were entitled to them, because the opinions of the expert would have been inadmissible if his answers had disclosed that they were based, even in part, on what someone else told him. It follows that the rulings sustaining the objections were error which necessitates a reversal of the case.

It might be said also that the statements of the court, that the "witness would not be here testifying upon something the attorney told him; he is testifying to the conditions as he found them," and that

"the witness would not be guided by what the attorney told him, but would be guided by what he found on examination," constitute comments on the evidence and are prohibited by section 12, article 6 of the state Constitution.

Other errors are assigned, but it is unnecessary to discuss them, since they may not occur in the next trial.

The judgment is reversed and the cause remanded, with instructions to grant a new trial.

LOCKWOOD, C. J., and ROSS, J., concur.