932 P.2d 297

**EMERGENCY CARE DYNAMICS, LTD., an Arizona professional corporation; Tamsen Professional Services, LTD., an Arizona professional corporation; and Mark J. Tamsen, M.D., Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Elizabeth A. Stover, a judge thereof, Respondent Judge,**

**MOHAVE EMERGENCY PHYSICIANS, INC., an Arizona professional corporation; Mohave Emergency Physicians, II, INC., an Arizona professional corporation; David C. Welch, D.O. and Carol Pettrone, husband and wife; David C. Welch, D.O., P.C., an Arizona professional corporation; Jose L. Gochoco, D.O. and Catherine E. Gochoco, husband and wife; Jose L. Gochoco, D.O., P.C., an Arizona professional corporation, Real Parties in Interest.**

No. 1 CA–SA 96–0140.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 4, 1997.

Steptoe & Johnson, L.L.P. by David J. Bodney, Peter B. Swann, Lisa L. Glow and Tracy L. Wareing, Phoenix, for Petitioners.

Broening, Oberg, Woods, Wilson & Cass, P.C. by James R. Broening, Cynthia Cheney and David S. Cohen, Phoenix, for Real Parties In Interest Mohave Emergency, Gochoco, and Welch.

## OPINION

FIDEL, Presiding Judge.

The rule of work-product immunity bars adversary discovery of a lawyer's mental impressions, conclusions, opinions, and legal theories concerning a pending or impending case. But does the rule immunize a lawyer's communications to an expert witness on a subject the expert will testify about at trial? And if the expert has been hired not only to testify, but also to help the lawyer prepare for trial, does this dual role immunize communications that would lack immunity if the expert were hired for testimony alone? These questions are presented in this special action. We hold that a lawyer forgoes work-product protection for communications with an expert witness concerning the subject of the expert's testimony even if the expert also plays a consulting role.

## I.

The underlying lawsuit is an antitrust and breach-of-contract action, whose merits do not concern us here. Petitioners, the plaintiffs, hired Michael J. Williams, an "antitrust expert," for testimony and consultation. The Real Parties In Interest, preparing to depose Williams, served him with a subpoena duces tecum, commanding him to produce his entire case file. Petitioners moved to quash both this subpoena and another to Williams's custodian of records. Invoking work-product immunity, Petitioners' lawyers argued that Williams's file contained protected hypotheses, mental impressions, and litigation strategies that they had explored with Williams in his consulting role. The trial court denied Petitioners' motion and ordered them to produce the file; the court declined to first review the file *in camera.*

Petitioners seek relief by special action. We accept jurisdiction. "When a trial court orders disclosures that a party or witness believes to be protected by a privilege, appeal provides no remedy. Special action is the proper means to seek relief." *Church of Jesus Christ of Latter–Day Saints v. Superior Court,* 159 Ariz. 24, 25–26, 764 P.2d 759, 760–61 (App.1988).

## II.

If Petitioners had engaged Williams as a consulting, not testimonial, expert and chosen a different expert to testify at trial, Petitioners' lawyers could protect their communications with Williams under Rule 26(b)(4)(B), Arizona Rules of Civil Procedure, 16 Ariz.Rev.Stat. Ann. ("A.R.S.") (1987 & Supp.1996) (relating to discovery from experts retained for trial preparation but not expected to testify). *Cf. State ex rel. Corbin v. Ybarra,* 161 Ariz. 188, 193, 777 P.2d 686,

691 (Ariz.1989)(reports from experts are attorney work product when those experts will not be presented as witnesses at trial). What differentiates this case is that Williams was retained as both a testimonial and consulting expert. The question follows whether Petitioners' lawyers have sacrificed work-product protection that would have shielded their communications with a consulting expert by using their testimonial expert for that role.

To respond, we first examine Rules 26(b)(3) and 26(b)(4) of the Arizona Rules of Civil Procedure. The former constitutes Arizona's work-product rule. The latter governs discovery from testimonial and consulting experts.

Rule 26(b)(3) (Supp.1996) provides in pertinent part:

> *Trial Preparation: Materials.* Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Rule 26(b)(4) provides in pertinent part:

> *Trial Preparation: Experts.* Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule

and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

> (A)(i) [relating to interrogatories]. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope ... as the court may deem appropriate.

> (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Subsection (B) of Rule 26(b)(4) imposes a substantial barrier against discovery from consulting experts—those not expected to be called as witnesses at trial. Subsection (A)(ii), in contrast, extends the trial court broad authority to order such discovery from a testimonial expert "as the court may deem appropriate." [1] The rule, however, does not expressly address whether such discovery may extend to the expert's communications with counsel. Nor does it address what happens when the expert plays a joint consulting and testimonial role. Curiously, these questions are of first impression in Arizona. Decisions under Federal Rule 26 are split.

In *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 593 (3d Cir.1984), the Third Circuit extended work-product protection to documents that lawyers had provided to a testimonial expert containing the lawyers' " 'mental impressions and thought processes relating to the legal theories' " of the case. The court found only "marginal value in the revelation on cross-examination that the expert's view may have originated with an attorney's opinion or theory," and concluded that this marginal value did not "warrant

---

1. Under Rule 26(b)(4)(A)(ii), a party must proceed by motion and order before taking discovery from a testimonial expert by means other than interrogatories. Explaining this requirement, however, the drafting committee stated, "Because of our strong desire to maintain substantial uniformity between the State and Federal Rules, we keep the phrase 'upon motion' in the Rule; but it is intended in this jurisdiction that the motion shall be perfunctory, and that it will be automatically granted, barring the most exceptional circumstances." 1970 State Bar Committee Note, Ariz. R. Civ. P. 26(b)(4).

overriding the strong policy against disclosure of documents consisting of core attorney's work product." *Id.* at 595 (footnote omitted); *accord Haworth, Inc. v. Herman Miller, Inc.,* 162 F.R.D. 289 (W.D.Mich. 1995).

The leading case for the contrary position is *Intermedics, Inc. v. Ventritex, Inc.,* 139 F.R.D. 384, 387 (N.D.Cal.1991), which holds:

> [A]bsent an extraordinary showing of unfairness that goes well beyond the interests generally protected by the work product doctrine, written and oral communications from a lawyer to an expert that are related to matters about which the expert will offer testimony are discoverable, even when those communications otherwise would be deemed opinion work product.

*Accord United States v. City of Torrance,* 163 F.R.D. 590 (C.D.Cal.1995); *Furniture World, Inc. v. D.A.V. Thrift Stores, Inc.,* 168 F.R.D. 61 (D.N.M.1996). The *Intermedics* court rejected the premise that only marginal value is achieved by permitting cross-examiners to explore whether an expert's opinions have originated with counsel. 139 F.R.D. at 397. Rather, the court stated:

> [I]t would be fundamentally misleading, and could do great damage to the integrity of the truth finding process, if testimony that was being presented as the independent thinking of an "expert" in fact was the product, in whole or significant part, of the suggestions of counsel. The trier of fact has a right to know *who* is testifying.

*Id.* at 395–96. The court acknowledged that work-product immunity enables lawyers "to think dispassionately, reliably, and creatively both about the law and the evidence," and permits them "to preserve the privacy of their mental processes and to prevent others from 'leeching' off their work." *Id.* at 392. But lawyers can adequately maintain such protection, the court concluded, by choosing separate experts for testimony and consultation, recognizing in advance that their communications with testifying experts are likely to be discoverable. *Id.* at 392–93.

We find *Intermedics* more compatible than *Bogosian* with discovery rules and practice in this state. Arizona has long favored full cross-examination of expert witnesses. In *Middleton v. Green,* 35 Ariz. 205, 210–11, 276 P. 322, 324 (1929), a personal injury case, the trial court refused to permit defendants' lawyer to ask plaintiff's doctor whether he first learned of plaintiff's condition from plaintiff's counsel. Defendants contended that "they had a right, not being bound by the statement of a witness for plaintiff, to examine him fully as to the source of his information, and to deprive them of this right constituted prejudicial error." *Id.* at 212, 276 P. at 325. Our supreme court agreed, holding that the trial court had erred by "depriving the defendants of their right to test [the] accuracy [of adversary expert testimony] by throwing upon it the searchlight of a full cross-examination." *Id.*

*Middleton,* as Petitioners point out, predated the work-product doctrine, which arose in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and appeared in Arizona in *Dean v. Superior Court,* 84 Ariz. 104, 324 P.2d 764 (1958). Thus, Respondents overstate its impact when they argue that *Middleton* is determinative of the present case. Further, the *Middleton* court assumed that an expert's opinions could be invalidated by showing them to be based, even in part, upon information from another source. 35 Ariz. at 211–12, 276 P. at 324. It is not invalidating, in current practice, for an expert to gather information from another source. *See* Ariz. R. Evid. 703, 17A A.R.S. (Supp.1996).

Yet *Middleton* remains timely in its reliance upon "the searchlight of a full cross-examination" to test the truth and reliability of expert opinion. 35 Ariz. at 212, 276 P. at 325. Just as an expert witness's sources remain a proper subject of cross-examination, *see* Ariz. R. Evid. 705; *Zier v. Shamrock Dairy,* 4 Ariz.App. 382, 384, 420 P.2d 954, 956 (1966), so do the expert's relations with the hiring party and its counsel. *See State v. Mauro,* 159 Ariz. 186, 199, 766 P.2d 59, 72 (1988)("the defense was able to extensively cross-examine [the state's expert] about his alleged bias, including his opinions in prior cases, and the amount of money he had been paid by the state to testify . . . in this and other cases").

Just as Arizona authorities have granted expansive scope for expert cross-examination, so have they granted expansive scope for pretrial discovery from expert witnesses. The State Bar Committee Note to the 1970 Amendment of Rule 26(b)(4) states, "Under Arizona practice, ... an expert ... may be examined [at deposition] upon any matter which would be permitted if he were cross-examined in open court at the conclusion of his main testimony." Before the adoption of Rule 26(b), our supreme court had placed the opinions of expert witnesses and their "groundwork" within the open range of pretrial discovery. *See State ex rel. Willey v. Whitman,* 91 Ariz. 120, 124, 370 P.2d 273, 277 (1962). Rule 26(b)(4) was intended to maintain, not deviate from, the discovery practice that evolved under *Whitman. See* 1970 State Bar Committee Note, Ariz. R. Civ. P. 26(b)(4).

In short, since *Middleton,* Arizona authorities consistently have supported free-ranging, skeptical cross-examination of expert witnesses and open discovery to probe the groundwork for their opinions. It would be incompatible with these authorities, in our judgment, for an Arizona court to adopt the *Bogosian* premise that only marginal value can be achieved by revelation on cross-examination that an expert's theories originated with the hiring lawyer.

We acknowledge the value of enabling trial lawyers to consult with experts when necessary to prepare themselves for trial. We return, however, to the fact that Rule 26(b)(4) distinguishes sharply between testimonial and consulting experts, prohibiting discovery from the latter except "upon a showing of exceptional circumstances." Ariz. R. Civ. P. 26(b)(4)(B); *see also Corbin,* 161 Ariz. at 193, 777 P.2d at 691 (defining as lawyer work product the report of a "nontestifying expert used only for [the lawyer's] investigation and education"). In *Corbin,* the supreme court posed but did not answer the question whether a lawyer waives protection for communications with a consulting expert "by electing to present the expert as a witness." *Id.* That question, presented here, was recently answered in *Furniture World.*

The court there, building upon *Intermedics,* stated:

[A] person initially selected to testify as an expert at trial cannot be shielded from questioning by later being also designated as a consultant expert and invoking the work product doctrine. Counsel must choose to designate an expert as either one who will testify at trial or consult with counsel. Having an expert who is both creates an unmanageable situation by requiring a question-by-question analysis of an expert witnesses' deposition testimony to determine whether the work product doctrine applies.

*Furniture World,* 168 F.R.D. at 63.

Like the court in *Furniture World,* we too find it "unmanageable" to attach an indeterminate measure of work-product protection to a blending of expert consulting and testimonial roles. Such protection would be uncertain for those invoking it and amorphous for those attacking it. Discovery battles to define the extent of such protection case-by-case would raise litigation costs for parties and inflict trial courts with an endless string of *in camera* inspections. As Petitioners themselves state in their opening brief:

Ambiguity as to the extent to which attorneys can work in conjunction with consultants and expert witnesses to prepare complex mixed issues of law and fact for trial chills the parties' analytical process and discourages thorough preparation for trial.

In our judgment, the most practical, most economical, and surest way to relieve such ambiguity is to adopt the either/or rule of *Furniture World.* An expert may be either a witness or a protected consultant, but not both. "Counsel must choose." *Id.*

In adopting this position, we decline to adopt an approach that the American Law Institute is currently examining in the RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, Proposed Final Draft No. 1 (March 29, 1996). Section 141 of the Restatement Draft, entitled "Waiver of Work–Product Immunity by Use in Litigation," provides in pertinent part:

(2) The work-product immunity is waived for recorded material if a witness

. . . .

(b) employed the material in preparing to testify, and the tribunal finds that disclosure is required in the interests of justice.

As drafted, section 141(2)(b) would apply comprehensively to expert witnesses, non-expert witnesses, and the parties themselves. Each of those categories, however, warrants separate consideration; and we limit our discussion to the utility of section 141(2)(b) as a standard to regulate disclosure of recorded material that an expert witness has considered. We conclude that such a standard would generate the costs, uncertainty, and managerial problems discussed above. Discovery disputes over expert witness files, presently rare in Arizona, would be invited. With each dispute, the trial court would be obliged to undertake a time-consuming inquiry to determine: (1) whether the expert had examined the documents for trial preparation or "for generally facilitating preparation of the case," RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 141 cmt. e (Proposed Final Draft No. 1 1996), and (2) if the former, whether disclosure would serve the interests of justice.

We decline to impose this burden on the courts, this cost on the parties, or this uncertain standard on the law. We find the bright line of an either/or rule more workable for all concerned. Lawyers can adequately seek expert assistance in trial preparation and adequately maintain work-product protection for such consultations by choosing a different expert than their expert witness for a preparatory role. *See Intermedics,* 139 F.R.D. at 392–93. Though an either/or approach to testimonial and consulting experts will sometimes oblige parties to hire two experts instead of one, such costs, though potentially substantial, are likely cumulatively to be lesser than the systemic costs of innumerable discovery battles over expert witness files.

For the foregoing reasons, we conclude that the trial court properly rejected the Petitioners' work-product claim and permissibly declined to conduct an *in camera* inspection.

GARBARINO and GRANT, JJ., concur.