129 P.3d 465

Duane SLADE and Jennifer Slade, husband and wife, Guy Andrew Williams and Lisa Williams, husband and wife, Petitioners,

v.

The Honorable Barry C. SCHNEIDER, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

Arizona Corporation Commission, Real Party in Interest.

No. 1 CA–SA 05–0129.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 28, 2006.

Lewis and Roca LLP By L. Keith Beauchamp, Thomas A. Gilson, Amy M. Wilkins, Phoenix Attorneys for Petitioners.

Arizona Corporation Commission and Securities Division By Wendy L. Coy, Julie A. Coleman, Phoenix, Attorneys for Real Party in Interest.

## OPINION

OROZCO, Judge.

¶ 1 Duane Slade and Guy Williams (Petitioners) challenge the trial court's partial denial of their Motion to Compel the Arizona Corporation Commission (Commission) to disclose: (1) the identities of all the investors who had made specific allegations against them; and (2) information and documents gathered in the course of the Commission's investigation of their alleged securities violations. The trial court found that Arizona Revised Statutes (A.R.S.) section 44–2042.A (2003) (the Confidentiality Statute) protected from disclosure information about those in-

vestors whom the Commission did not disclose as testifying witnesses, even when the Commission had designated its consulting expert as a testifying expert. The issue presented is whether the trial court properly determined that the information Petitioners sought is protected by the Confidentiality Statute.

¶ 2 We conclude that the Commission waived the protections that the Confidentiality Statute provided to names, documents and information it acquired during its investigations in two ways: (1) by designating a consulting expert as a testifying expert; and (2) by making the confidential information a matter of public record when it filed the information with a public tribunal.

## FACTS AND PROCEDURAL HISTORY

¶ 3 On April 1, 2005, the Commission filed a Complaint against Petitioners and the entities they operated, alleging that they committed securities fraud in connection with the offer or sale of securities through two investment programs, Mathon Fund and Mathon Fund I. The Commission asked the trial court to enter an ex parte temporary restraining order (TRO), to appoint a receiver to take control of Petitioners' thirty entities and to freeze their assets. The Commission also requested the trial court to preliminarily enjoin Petitioners from committing securities fraud.

¶ 4 In support of its application for a TRO, the Commission included the affidavits of its accountant and investigator, both employees of the Commission's Securities Division (Division).

¶ 5 According to the accountant's affidavit, he reviewed and analyzed business and bank records that Petitioners and various banks provided to the Division. He also attended various Commission case team meetings, meetings with other law enforcement and regulatory agencies and examinations of investors under oath. From these records and meetings, the accountant concluded that Petitioners violated Arizona's securities laws by

"[making] [P]onzi-type [1] payments to existing investors with new investors' funds for loans that are either in default or bankruptcy." The accountant also concluded that "[Petitioners] ha[d] not funded [or] held, in a separate account, a reserve in cash or assets in any amount."

¶ 6 In the investigator's affidavit, he explained his duties as including interviewing victims, witnesses and suspects; examining evidence; managing case files; preparing and serving subpoenas, other legal documents and reports; and testifying in judicial proceedings. The investigator referred to specific numbers of Mathon Fund and Mathon Fund I investors that the Commission had identified. The investigator's affidavit further described information from these investors regarding Petitioners' representations to them, specific securities and financial transactions involving the two funds and Petitioners' failure to file appropriate paperwork to secure loans. Numerous investors also informed the investigator that they would not have invested had they known about some of Petitioners' activities. Finally, the investigator avowed that Petitioners admitted continuing to raise funds from investors and extending loans to borrowers.

¶ 7 After determining good cause existed to believe that Petitioners had violated Arizona's securities laws, would continue doing so and used improper means to obtain investor funds and assets, the trial court entered the ex parte TRO and scheduled a preliminary injunction hearing.

¶ 8 In preparing for the preliminary injunction hearing, Petitioners requested the Commission to produce all notes, memoranda or summaries the accountant and investigator prepared relating to the issues, conclusions and assertions in their affidavits. Petitioners also sought all documents related to the specific allegations contained in the Commission's Complaint and the investigator's affidavit and asked the Commission to identify the specific investors who had made each of the allegations. The Commission provided

Petitioners with some of the requested records and reserved any rights, objections or privileges it had pursuant to statutes, attorney-client privilege, work-product immunity, investigative privilege or the privacy interest of individuals.

¶ 9 Petitioners filed a Motion to Compel the Commission to produce the remaining records, including the accountant's handwritten notes that he had taken during the Commission's examination of witnesses during its investigation, the identity of each individual investor referenced to the specific investors' allegation contained in the affidavits and the investigator's entire case file. They also moved to depose the investigator.

¶ 10 The Commission responded that it lawfully withheld the accountant's materials and investigator's case file because they were privileged or confidential by statute. The Commission also contended that the lead investigator should not be deposed because he was a fact witness and the Commission had not designated him as an expert witness.

¶ 11 After oral argument, the trial court determined that once the accountant had been identified as an expert, all communications to him, even those from an attorney and protected by the work-product immunity, were discoverable. It also held that the Petitioners could not discover the identities of those investors the Commission had not disclosed. Accordingly, the trial court ordered the Commission to "disclose the notes of any interviews made by [the accountant] concerning any investor thus far identified. As other investors may be identified in the future, the notes, if any as to such investors shall be disclosed promptly." The court also ordered the investigator be deposed but limited the deposition to: (1) the affidavit he submitted in support of the application for TRO; and (2) questions regarding only those investors the Commission planned to question at the preliminary injunction hearing.

¶ 12 This special action was filed. Shortly thereafter, Petitioners deposed the investigator and the accountant, subject to the restric-

---

1. A Ponzi scheme is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments." Black's Law Dictionary 1180 (7th ed.1999). It is named for Charles Ponzi, who in the 1920s was convicted of fraudulent schemes conducted in Boston. *Id.*

tions the trial court imposed. The Commission also provided Petitioners with redacted memoranda summarizing interviews with the investors it planned to call at the preliminary injunction hearing but did not produce any memoranda or notes relating to any non-testifying investors.

¶ 13 Before the scheduled preliminary injunction hearing, the parties stipulated to convert the ex parte TRO into a preliminary injunction, and the trial court approved the stipulation and vacated the preliminary injunction hearing.

## MOOTNESS

¶ 14 The Commission argues that the sole issue Petitioners raise is whether the trial court erred in limiting access to information and documents to prepare for the preliminary injunction hearing. It reasons that because the trial court vacated the hearing after the parties stipulated to convert the restraining order into a preliminary injunction, the prehearing discovery dispute between the Commission and Petitioners is moot. Petitioners, however, contend that "the trial court's misinterpretation of the Confidentiality Statute will continue to block their efforts to obtain relevant, non-privileged discovery, and to defend themselves at trial."

¶ 15 Generally, a court will not consider moot questions. *Lana v. Woodburn,* 211 Ariz. 62, 65, ¶ 9, 116 P.3d 1222, 1225 (App.2005) (citing *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Bd.,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982)). A court, however, will consider moot questions if the issues are of great public importance or are capable of repetition yet evading review. *Id.*

¶ 16 Although the trial court vacated the preliminary injunction hearing, the issue presented is likely to recur in this litigation and in future cases in which the Commission relies on the Confidentiality Statute to withhold relevant, non-privileged information and documents. We therefore deny the Commission's request to dismiss the Petition as moot.

## JURISDICTION

¶ 17 We have discretion to either accept or deny special action jurisdiction. *Roman Catholic Diocese of Phoenix v. Super. Ct.,* 204 Ariz. 225, 227, ¶ 2, 62 P.3d 970, 972 (App.2003) (citing *State ex rel. Pennartz v. Olcavage,* 200 Ariz. 582, 585, ¶ 8, 30 P.3d 649, 652 (App.2001)). We accepted special action jurisdiction because the issues involve a question of whether information is privileged. *See Jolly v. Super. Ct.,* 112 Ariz. 186, 188, 540 P.2d 658, 660 (1975). Additionally, although Petitioners arguably have a remedy by appeal, the trial court's erroneous interpretation of the Confidentiality Statute will substantially hamper their ability to discover relevant and non-privileged information throughout this litigation. Finally, the questions presented in this special action require us to determine whether the work-product immunity has been waived, a question of law, and the meaning and scope of the Confidentiality Statute, a question of law and first impression. *See, e.g., Blake v. Schwartz,* 202 Ariz. 120, 122, ¶ 7, 42 P.3d 6, 8 (App.2002).

## STANDARD OF REVIEW

¶ 18 Interpreting the Confidentiality Statute is a question of law we review *de novo. In re Estate of Jung,* 210 Ariz. 202, 204, ¶ 11, 109 P.3d 97, 99 (App.2005). We also review *de novo* the question whether a party has waived a privilege. *State v. Wilson,* 200 Ariz. 390, 393, ¶ 4, 26 P.3d 1161, 1164 (App.2001) (citing *Home Indem. Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326 (9th Cir.1995)).

## DISCUSSION

¶ 19 The Confidentiality Statute, A.R.S. § 44–2042.A, states in pertinent part:

The names of complainants and all information or documents obtained by any officer, employee or agent of the commission, including the shorthand reporter or stenographer transcribing the reporter's notes, in the course of any examination or investigation are confidential unless the names, information or documents are made a matter of public record.

**180**

¶ 20 Although Arizona Rule of Civil Procedure (Rule) 26(b) allows Petitioners to obtain relevant and non-privileged information and documents, the Confidentiality Statute, in essence, protects from disclosure the names of complainants, information and documents the Commission obtains during any examination or investigation. The names and information or documents are not discoverable, unless they are "made a matter of public record" or the Commission otherwise waives the Confidentiality Statute. *See* A.R.S. § 44–2042.A.

## A. The Accountant

### The Confidentiality Statute

■ ¶ 21 The first issue is whether the Commission waived the statutory confidentiality afforded to the undisclosed investors' names, information and documents the Commission obtained during its investigation by designating the accountant, its consulting expert, as a testifying expert.[2]

¶ 22 In *Arizona Independent Redistricting Commission v. Fields*, 206 Ariz. 130, 75 P.3d 1088 (App.2003), this court determined that the legislative privilege, like the work-product immunity, may be waived by designating a consulting expert as a testifying expert. We reasoned that the three factors compelling a waiver of work-product immunity when a consulting expert is designated as a testifying expert equally applied to the legislative privilege: (1) Arizona's "long-favored practice of allowing full cross-examination of expert witnesses"; (2) the intent of Rule 26(b)(4) governing discovery of expert opinions, which favors "wide-open discovery of experts"; and (3) the court's preference for a "bright-line" rule for discovery aimed at experts who are employed jointly as consultants and testifying experts rather than a rule resulting in expensive and time-consuming discovery disputes. *Id.* at 143–144, ¶¶ 43–45, 75 P.3d at 1101–02 (citations omitted). These three factors are similarly applicable in deciding that the Commission also waived the protections of the Confidentiality Statute by identifying the accountant as a testifying expert.

¶ 23 Citing *Emergency Care*, Petitioners argue they may discover the accountant's entire case file, including the handwritten notes he took while attending various Commission meetings and examinations under oath. The Commission objects, asserting that according to *Fields*, it is not required to disclose the accountant's "entire case file" but rather only information, materials and communications "relating to the subject of the testifying expert's testimony." Petitioners counter that the Commission's distinction is one "without a difference" because "presumably each document in a testifying expert's 'case file' relates to the subject matter of his testimony."

¶ 24 While the facts outlined in *Emergency Care* refer to the Real Parties in Interest serving the testifying expert with a subpoena commanding him to produce "his entire case file," 188 Ariz. at 33, 932 P.2d at 298, we did not specifically order the testifying expert to produce "his entire case file" but merely concluded the trial court properly rejected the Petitioner's work-product claim. *Id.* at 37, 932 P.2d at 302. The court reasoned that "written and oral communications from a lawyer to an expert *that are related to matters about which the expert will offer testimony* are discoverable. . . ." *Id.* (Citation omitted; emphasis added.) Similarly, in *Fields*, this court held that the privilege holder, by designating consulting experts as testifying experts, "waived the privilege (1) attaching to communications with those experts, or any materials reviewed by them, *and* (2) relating to the subject of the expert's testimony." 206 Ariz. at 144–45, ¶ 50, 75 P.3d at 1102–03.

¶ 25 The Commission has not explained clearly what information or material in its accountant's case file does not relate to the *subject matter* of his testimony. Therefore, in designating the accountant as a testifying expert, the accountant's entire case file is

---

**2.** The parties agree that the Commission waived its work-product immunity with its consulting expert, the accountant, when it designated him as an expert witness. *See Emergency Care Dynamics, Ltd. v. Super. Ct.*, 188 Ariz. 32, 33, 932 P.2d 297, 298 (App.1997) (holding "that a lawyer forgoes work-product protection for communications with an expert witness concerning the subject of the expert's testimony even if the expert also plays a consulting role").

discoverable to the extent that he obtained those materials in the course of his investigation and they relate to the subject of his testimony. *See id.* We note, however, that the Commission retains the option to challenge what in the accountant's case file does not relate to the "particular subject of the expert's testimony" and therefore remains confidential.

## B. The Investigator

### 1. Work–Product Immunity

¶ 26 Petitioners ask us to require the Commission to disclose the investigator's notes and memoranda. They assert that they are discoverable because the Commission waived any work-product immunity that may have applied to the investigator's notes and memoranda when the Commission submitted his affidavit, which Petitioners argue constituted expert testimony. According to Petitioners, the Commission has essentially allowed the investigator to testify as an expert regarding the conclusions he reached when it submitted his affidavit to support its ex parte TRO request.

¶ 27 As previously stated, a privilege holder may waive work-product protection for communications and materials with a consulting expert by designating that witness as a testifying expert who will testify as an expert. *Emergency Care*, 188 Ariz. at 34, 932 P.2d at 299. Rule 26(b)(4)(A) permits a party to depose any person who has been *identified* as an expert. Each party is also required to disclose in writing the experts it expects to call at trial. Ariz. R. Civ. P. Rule 26.1(a)(6). A privilege holder, however, "exclusively controls the selection of its testifying experts." *Ariz. Indep. Redistricting Comm'n*, 206 Ariz. at 144, ¶ 49, 75 P.3d at 1102. Additionally, a privilege holder may "reinstate the privilege by removing that designation before expert opinion evidence is offered through production of a report, responses to discovery, or expert testimony." *Ariz. Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, 359, ¶ 83, 121 P.3d 843, 865 (App.2005) (citation omitted).

¶ 28 We reject Petitioners' argument that the investigator testified as an expert because the Commission submitted his affidavit with its ex parte TRO request. Under the circumstances of this case, submitting the investigator's affidavit in support of its motion for an ex parte TRO did not transform the investigator into a testifying expert. Additionally, before the preliminary injunction hearing, the Commission informed Petitioners that it had not designated the investigator "as anything other than a fact witness." The Commission also explained that the investigator was not expressing opinions in his affidavit but was instead providing a factual summary of portions of his investigation. Because the investigator is not a testifying expert, the Commission did not waive its work-product immunity.

### 2. The Confidentiality Statute

¶ 29 Even though we conclude that the Commission did not waive its work product-immunity with regard to the investigator, we next decide whether the Commission waived the protections of the Confidentiality Statute for the undisclosed investors' names, information and documents the investigator obtained during his investigation by making that information a matter of public record. Petitioners have deposed the investigator about the investors the Commission identified as witnesses and planned to call at the preliminary injunction hearing. They also seek, however, to depose the investigator about the investors whose identities the Commission has not disclosed. Petitioners assert they are entitled to the undisclosed investors' names, information and documents because the Commission made that information a matter of public record when it filed its Complaint along with the investigator's affidavit and "extensively publiciz[ed] the results of its investigation" in news stories and on a Commission-created website. The Commission responds that the confidentiality of the names, documents and information does not terminate unless the Division files the information and documents with a public tribunal, making them a matter of public record.

¶ 30 Since the legislature enacted the Confidentiality Statute in 2000, it has never been

amended and no published opinion has interpreted its provisions. Though no published cases interpret when the Commission makes the names, information and documents a matter of public record, we need not determine all of the Commission's actions that would result in the names, information and documents no longer being confidential because we agree with the Commission that this occurs when the Commission files the information or documents with a public tribunal.

¶ 31 In filing its Complaint against Petitioners, the Commission included the investigator's affidavit. In doing so, the Commission made a matter of public record all of the *information* contained in his affidavit.

¶ 32 In the investigator's affidavit, for example, he states:

9. To date, the investigation has identified at least 114 Mathon Fund I investors who invested over $68,000,000 encompassing a time frame beginning in April of 2002, ending in February of 2004. To date, the investigation has identified at least 104 Mathon Fund investors who invested over $48,000,000, encompassing a time frame beginning November of 2003 to as recent as March 24, 2005. Investors are located in various states and countries including Arizona, California, Idaho, Florida, Massachusetts, Michigan, Missouri, Nevada, South Carolina, Switzerland, Texas, Utah and Washington.

. . .

41. A number of Mathon Fund investors would not have invested had they known Mathon Fund I defaulted loans may be rolled into Mathon Fund.

42. A number of Mathon Fund investors would not have invested had they known their funds may be used to pay previous investors.[3]

The Commission therefore must disclose the names of the investors referred to in the investigator's entire affidavit and any materials upon which the investigator relied in compiling or assessing the information disclosed in the affidavit.

## RELIEF GRANTED

¶ 33 We vacate that portion of the trial court's May 12, 2005 minute entry limiting Petitioners' access to the accountant's notes and interviews concerning only those investors thus far identified and conclude that the accountant's entire case file is discoverable, except those portions, if any, that do not relate to the particular subject of the expert's testimony. We further order the Commission to disclose the investors' names, information and documents the investigator referred to in his affidavit and to allow Petitioners to depose the investigator regarding his affidavit. If any information is privileged or protected by another statute, the Commission shall submit any names, information or documents it deems privileged and not waived to the trial court for an *in camera* inspection to determine whether they are to be disclosed.

CONCURRING: G. MURRAY SNOW, Presiding Judge and PATRICK IRVINE, Judge.

---

3. These are only some, but not all, of the examples of the information that was included in the investigator's affidavit that the Commission made

a matter of public record by submitting it to the trial court in support of its request for an ex parte TRO.