290 P.3d 1214

Daniel J. PARA, M.D., and Jane Doe Para, husband and wife; Surgical Offices of Daniel J. Para, M.D., FACS, PLLC, an Arizona corporation; Michael D. Beck, M.D., Petitioners,

v.

The Honorable Arthur ANDERSON, Judge of the Superior Court of the State of Arizona, in and for the COUNTY OF MARICOPA, Respondent Judge,

Jonathan Connolly, individually and on behalf of the statutory beneficiaries of Cortney Ann Connolly, deceased, Real Party in Interest.

No. 1 CA–SA 12–0086.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 1, 2012.

Jennings, Strouss & Salmon, P.L.C. By John J. Egbert, Jay A. Fradkin, Phoenix, Attorneys for Petitioners Para.

Smith, Farhart & Hornstein, LLP By Donald H. Smith, Elizabeth J. Farhart, Peoria, Attorneys for Petitioner Beck.

Harris, Powers & Cunningham, P.L.L.C. By Shawn M. Cunningham, Joseph D'Aguanno, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SWANN, Judge.

¶ 1 This special action requires us to decide whether redesignation of an expert witness in a civil case from "testifying" to "consulting" operates to insulate the expert from discovery. We previously issued an order accepting jurisdiction with a written opinion to follow. This is that opinion. We hold that a party may not reinstate the privileges and discovery protections that apply to consulting experts by redesignating an expert as a consultant once the expert's opinions have been disclosed. We further hold that while the opposing party may depose such an expert, the trial judge retains broad discretion under Ariz. R. Evid. 403 to regulate the use of that expert's testimony at trial.

### FACTS AND PROCEDURAL HISTORY

¶ 2 Respondent Jonathan Connolly sued multiple medical corporations and doctors, including Dr. Daniel Para and Dr. Nabil Khoury, for negligence and wrongful death. Connolly disclosed Dr. Steven Pantilat as an expert who would testify that Dr. Khoury's treatment of the decedent fell below the applicable standard of care. In March 2010, pursuant to A.R.S. § 12–2603, Connolly disclosed Dr. Pantilat's preliminary affidavit, in which Dr. Pantilat opined that Dr. Khoury negligently failed to order appropriate tests and ensure the decedent's examination and treatment by a general surgeon. Connolly disclosed his ninth supplemental disclosure statement in June 2011, on the court-ordered deadline for all parties' disclosure of their standard of care and causation experts' opinions. The disclosure stated that Dr. Pantilat would testify that Dr. Khoury negligently failed to: (1) review the decedent's vital signs, (2) determine why she had not undergone a CT scan or when she would undergo such a scan, and timely consult with a general surgeon when he found out the CT scan was unavailable, (3) take an abdominal x-ray, (4) perform and document an adequate abdominal examination, and (5) timely initiate systemic antibiotic therapy.

¶ 3 On or about October 6, 2011, Dr. Khoury and Connolly settled. Shortly after the notice of settlement was filed, Dr. Para noticed Dr. Pantilat's deposition and joined in a co-defendant's designation of Dr. Khoury as a non-party at fault. Dr. Para also gave notice of his intent to rely on Connolly's previous disclosure of Dr. Pantilat's opinions against Dr. Khoury. Connolly responded by filing a notice purporting to redesignate Dr. Pantilat as a consulting expert only, and moved the court to enter a protective order barring the non-settling defendants from deposing Dr. Pantilat or seeking discovery related to him.

¶ 4 Dr. Para opposed Connolly's motion for a protective order and requested that Dr. Pantilat be ordered to appear for deposition. After hearing argument, the superior court granted Connolly's motion and ordered: "Dr. Pantilat cannot be deposed." This special action followed.

¶ 5 Dr. Para contends that Connolly's redesignation of Dr. Pantilat as a consulting expert did not reinstate the privileges and discovery protections that apply to consulting experts because the redesignation came too late in the course of the litigation and disclosure.

¶ 6 We accepted special action jurisdiction because the petition raises purely le-

gal questions of first impression concerning the application of the Rules of Civil Procedure and the nature of privilege. *Green v. Nygaard,* 213 Ariz. 460, 462, ¶ 6, 143 P.3d 393, 395 (App.2006). Special action jurisdiction is also warranted because the issue is of statewide importance and is likely to arise again. *Vo v. Superior Court,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992).

## DISCUSSION

■ ¶ 7 Arizona's discovery rules generally allow a party to pursue pretrial discovery from the opposing party's testifying experts. Ariz. R. Civ. P. 26(b)(4)(A) allows parties to depose "any person who has been identified as an expert whose opinions may be presented at trial." But Ariz. R. Civ. P. 26(b)(4)(B) limits discovery from experts not expected to testify at trial to "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."

■ ¶ 8 Because of the sharp distinction between the opportunities for discovery from testifying and consulting experts, a single expert may be designated either a testifying expert or a consulting expert, but not both. *Emergency Care Dynamics, Ltd. v. Superior Court (Mohave Emergency Physicians, Inc.),* 188 Ariz. 32, 36, 932 P.2d 297, 301 (App.1997). A party that elects to present its consulting expert as a testifying witness waives the privileges and discovery protections that would otherwise apply to the expert. *Id.* at 37, 932 P.2d at 302 (attorney work-product privilege waived where expert was retained as both consulting and testifying expert); *see also Ariz. Independent Redistricting Comm'n v. Fields* ("*Redistricting I*"), 206 Ariz. 130, 144–45, ¶¶ 47, 50, 75 P.3d 1088, 1102–03 (App.2003) (legislative privilege waived where Independent Redistricting Commission designated its consulting experts as testifying experts).

¶ 9 In some circumstances, however, we have held that a party may reinstate the privileges and discovery protections by changing the designation of its expert from testifying to consulting. *See Ariz. Minority Coalition for Fair Redistricting v. Ariz. Independent Redistricting Comm'n* ("*Redistricting II*"), 211 Ariz. 337, 359, ¶¶ 83–85, 121 P.3d 843, 865 (App.2005). In *Redistricting II,* we applied the holding of *Redistricting I* to the redesignation of an "expert" witness to a "fact" witness. We held that redesignation could effectively restore the privilege against discovery:

> [*Redistricting I* ] stands for the proposition that the legislative privilege is waived when a consultant has been designated as the party's expert *and* will testify as an expert. Thus, a party who has named a consultant as an expert can reinstate the privilege by removing that designation *before expert opinion evidence is offered through production of a report, responses to discovery, or expert testimony.*

*Id.* at 359, ¶ 83, 121 P.3d at 865 (emphasis added). We went on to note that "[t]he privilege is waived, however, and the expert-based documents become discoverable, when the fact witness is redesignated as an expert witness, and will testify as such." *Id.* at 360, ¶ 88, 121 P.3d at 866.

■ ¶ 10 The *Redistricting* cases are not controlling because their holdings did not directly concern redesignation of an expert from "consulting" to "testifying" under Ariz. R. Civ. P. 26(b)(4). Instead, they applied Arizona and federal cases arising under discovery rules to questions involving legislative privilege. But the principle that guided those decisions has logical application here: a party retaining an expert has the choice whether to allow information and opinions held by that expert to be subjected to discovery. Once the party chooses to disclose the expert's information and opinions, a mere change of label cannot erase the effect of the disclosure. If the nominal redesignation of an expert after disclosure could restore the privilege against discovery, form would triumph over substance, and the effectiveness of the discovery rules as tools for efficient and fair resolution of disputes would be blunted.

¶ 11 Federal courts have split on the question whether redesignation of an expert works to prevent discovery from that expert after the expert's report or opinion has been disclosed. *See Employer's Reins. Corp. v.*

*Clarendon Nat'l Ins. Co.,* 213 F.R.D. 422, 426–27 (D.Kan.2003) (collecting cases). Some federal courts allow such redesignation. *See, e.g., FMC Corp. v. Vendo Co.,* 196 F.Supp.2d 1023, 1041–47 (E.D.Cal.2002). Others have taken what the court in *Employers Reinsurance Corporation* called a "cat is out of the bag" approach. *See, e.g., Ferguson v. Michael Foods, Inc.,* 189 F.R.D. 408 (D.Minn.1999).

¶ 12 We conclude that the latter approach is more consistent with Arizona's broad disclosure requirements. In *Ferguson,* the court held that "designation of an expert as expected to be called at trial, . . . even if that designation is subsequently withdrawn, takes the opposing party's demand to depose and use the expert at trial out of the 'exceptional circumstances' category of rule 26(b)(4)(B)." 189 F.R.D. at 409 (quoting *House v. Combined Ins. Co. of Am.,* 168 F.R.D. 236, 245 (N.D.Iowa 1996)). *Ferguson* went on to adopt the holding in *House* that a party's designation of an expert as a testifying witness does not automatically entitle the opposing party to use that expert at trial. *Id.* According to *Ferguson* and *House,* the trial court retains discretion to evaluate and control the use of such testimony under Fed. R.Evid. 403. This approach adequately protects the party who initially retained the expert from unfair prejudice—e.g., the creation of an unwarranted impression in the minds of jurors that the party is attempting to conceal evidence—that might flow from the unrestricted use of the information and opinions held by the opposing party's expert.

¶ 13 Our holding is consistent with the existing Arizona case law disallowing concurrent designations, and with our recognition in *Redistricting II* that redesignation is effective only before expert opinion evidence is disclosed. *Redistricting II,* 211 Ariz. at 359, ¶ 83, 121 P.3d at 865. Moreover, our holding is consistent with the policy underlying the difference in the discovery available under Ariz. R. Civ. P. 26(b)(4) from testifying versus consulting experts. Ariz. R. Civ. P. 26(b)(4)(B) limits discovery from consulting experts to "exceptional circumstances" to encourage candor in the consultation process by "allowing counsel to obtain the expert

advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill." *Rubel v. Eli Lilly & Co.,* 160 F.R.D. 458, 460 (S.D.N.Y.1995) (construing analogous federal civil procedure rule). When "the party who consulted the expert in question has allowed discovery without objection, the policy has little or no application." *Id.*

¶ 14 To be sure, in certain unique circumstances we have allowed the reinstatement of privileges and discovery protections for witnesses whose opinions were previously disclosed. In *Slade v. Schneider,* we upheld the Arizona Corporation Commission's work-product privilege for an investigator who had submitted an affidavit in support of an application for an ex parte temporary restraining order in a securities fraud case. 212 Ariz. 176, 177–78, 181, ¶¶ 3–4, 7–8, 11, 28, 129 P.3d 465, 466–67, 470. In *Slade,* however, the investigator had served only as a fact witness, and we held that the Corporation Commission had not waived its work-product protection because it had never designated the investigator as a testifying expert. *Id.* at 181, ¶ 28, 129 P.3d at 470. *Slade* did, however, apply *Emergency Care* to hold that a party's designation of an accountant as an expert witness rendered the accountant's file discoverable. *Id.* at 180–81, ¶¶ 21–25, 129 P.3d at 469–70. In *Green v. Nygaard,* we allowed a party in a divorce case to reinstate the work-product protection with respect to a financial consultant who testified at a pre-decree hearing on matters that were resolved by stipulation before trial. 213 Ariz. 460, 461–62, 464, 465, ¶¶ 2–4, 12, 15, 143 P.3d 393, 394–95, 397, 398 (App.2006). *Green* has no application here because it involved disclosure of an expert opinion in a pretrial proceeding that had nothing to do with the issues at trial. Noting the unusual circumstances of the case, we expressly limited our holding in *Green* to its facts. *Id.* at 466, ¶ 19, 143 P.3d at 399.

¶ 15 No Arizona case has presented the precise question we answer today—whether an expert witness whose opinions have been disclosed may be shielded from discovery by

mere redesignation. We answer that question in the negative.

### CONCLUSION

¶ 16 For the reasons set forth above, we accept jurisdiction, grant relief, and order that the deposition of Dr. Pantilat may proceed.

CONCURRING: JOHN C. GEMMILL, Presiding Judge and ANDREW W. GOULD, Judge.